SELL v MITCHELL CORPORATION OF OWOSSO

Docket No. 212744. Submitted May 5, 1999, at Grand Rapids. Decided May 19, 2000, at 9:10 A.M.

Barbara Sell sustained a work-related injury while employed by Mitchell Corporation of Owosso at its Wright Street plant in Cadillac, Michigan. Sell accepted Mitchell's offer of favored work at the plant, but later quit that position when she decided to enroll at a community college for training as a child-care provider. Sell applied for worker's compensation wage-loss and vocational rehabilitation benefits. A worker's compensation magistrate determined that Sell was partially disabled, but denied wage-loss and vocational rehabilitation benefits on the ground that Sell had refused Mitchell's bona fide offer of employment. The Worker's Compensation Appeal Board affirmed the magistrate's decision, ruling that Sell was not entitled to wage-loss benefits because she had unreasonably refused favored work, and that Sell was not entitled to vocational rehabilitation benefits because she failed to follow statutory procedures for obtaining those benefits. Sell wrote to Mitchell to indicate that she was willing to return to the favored-work position even though she knew that the Wright Street plant had closed. Mitchell responded with a letter requiring Sell to submit to a medical examination. Sell did not undergo an examination because Mitchell would not pay in advance for expenses Sell would incur in traveling to the examining doctor's office. The Court of Appeals denied Sell leave to appeal the decision of the WCAB. The Supreme Court, in lieu of granting leave, remanded the matter to the Court of Appeals for consideration of whether Sell's claim for vocational rehabilitation benefits, as stated in her petition for hearing, was sufficient to invoke the procedure for vocational rehabilitation training under MCL 418.319(1); MSA 17.237(319)(1). The Supreme Court instructed the Court of Appeals to remand the matter to the WCAB if the Court of Appeals found that Sell's claim for vocational rehabilitation benefits was sufficient. 437 Mich 976 (1991). On remand, the Court of Appeals, HOOD, P.J., and SAWYER and JANSEN, JJ., held that Sell's petition was sufficient to invoke the procedures for vocational rehabilitation training pursuant to subsection 319(1). The Court of Appeals remanded the matter to the Worker's Compensation Appellate Commission for further proceedings on Sell's

claim for vocational rehabilitation benefits. 198 Mich App 683 (1993). The WCAC determined that Sell was entitled to vocational rehabilitation benefits for attending child-care training classes at the community college.

At the same time Sell's appeal relating to vocational rehabilitation benefits was pending, Sell renewed her petition in the worker's compensation bureau for wage-loss benefits, contending that the closure of the Wright Street plant amounted to a retraction of Mitchell's offer of favored work. A magistrate denied wage-loss benefits, concluding that Sell's offer to resume favored work, having been made 5 ½ years after Sell quit the favored-work position and while Sell knew that the Wright Street plant had closed, was not bona fide. The WCAC affirmed the magistrate's decision. Sell appealed by leave granted.

The Court of Appeals *held*:

1. Sell's eligibility for wage-loss benefits during the period in which she was enrolled at the community college depends on the interplay between MCL 418.319(1); MSA 17.237(319)(1), which governs a disabled employee's eligibility for vocational rehabilitation, and MCL 418.301(5); MSA 17.237(301)(5), which governs a disabled employee's eligibility for wage-loss benefits after refusing an offer of employment. The remedies offered in subsection 319(1) and subsection 301(5) are symmetrical and nonconflicting; the former merely provides an injured employee the right to receive vocational training and rehabilitation, while the latter gives the employer a similar remedy for initiating a determination of the injured employee's ability to work. A claimant might be entitled to vocational rehabilitation benefits, despite the availability of reasonable employment, if it was reasonable for the claimant to opt for vocational retraining instead of the offered employment. Conversely, a claimant who reasonably opts for vocational retraining in lieu of an employment offer might still be entitled to wage-loss benefits. Factors to be considered in determining whether a claimant who opts for vocational retraining instead of offered employment is entitled to vocational rehabilitation benefits, wage-loss benefits, or both such benefits include the following: was the offer of favored work reasonable and made in good faith; what type of work was offered to the employee; is there potential for future advancement for the employee in light of the favored work offered and the employee's physical disabilities; is the favored work within the employee's physical capacity to perform; does the employee have the necessary training or experience to perform the favored work; does the employee have good and reasonable cause to refuse to perform the favored work; has the employee taken specific steps towards

obtaining vocational rehabilitation training; and will such vocational rehabilitation training enable the employee to be restored to useful employment?

2. In this case, the matter must be remanded to the magistrate for a determination whether Sell's decision to reject the offer of favored work was reasonable so as to allow her to seek wage-loss benefits. Sell may not receive wage-loss benefits for any period in which she was not enrolled in a vocational program, but in which she refused available reasonable employment. Section 319 limits the duration of reimbursable rehabilitation to fifty-two weeks, except as may be extended for an additional fifty-two weeks by special order of the bureau director. Therefore, Sell's vocational rehabilitation cannot excuse her refusal of reasonable employment for a period longer than fifty-two weeks.

3. A disabled employee does not permanently forfeit wage-loss benefits by unreasonably refusing an offer of reasonable employment. The employee need only end the period of unreasonable refusal to trigger renewal of wage-loss benefits. On remand, the magistrate must determine whether Sell actually ended the period of refusal of favored work and whether the position ceased to be available. Any earnings Sell received from other employment are to be offset against any wage-loss benefits that may be awarded.

Reversed and remanded.

1. WORKER'S COMPENSATION — VOCATIONAL REHABILITATION — WAGE-LOSS BENEFITS — VOCATIONAL REHABILITATION BENEFITS.

A disabled employee who chooses vocational rehabilitation instead of offered reasonable employment may be eligible for both wage-loss benefits and vocational rehabilitation benefits during the period of vocational rehabilitation (MCL 418.301[5], 418.319[1]; MSA 17.237[301][5], 17.237[319][1]).

2. WORKER'S COMPENSATION — WAGE-LOSS BENEFITS — REFUSAL OF OFFERS OF EMPLOYMENT.

A disabled employee does not permanently forfeit wage-loss benefits by unreasonably refusing an offer of reasonable employment; the employee need only end the period of unreasonable refusal to trigger renewal of wage-loss benefits (MCL 418.301[5]; MSA 17.237[301][5]).

*Bott & Spencer, P.C.* (by *Timothy J. Bott*), for the plaintiff.

*Warner Norcross & Judd LLP* (by *Gerardyne M. Drozdowski*), for the defendant.

Before: Hoekstra, P.J., and Saad and R.B. Burns*, JJ.

Saad, J. Plaintiff appeals by leave granted the June 9, 1998, order of the Worker's Compensation Appellate Commission (WCAC) that affirmed the February 5, 1996, and October 7, 1997, decisions of the magistrate to deny continuing wage-loss benefits for plaintiff. We ordered this case held in abeyance pending our Supreme Court's review of our decision in *McJunkin v Cellasto Plastic Corp*, 226 Mich App 234; 573 NW2d 72 (1997). The Supreme Court issued its decision in *McJunkin* on March 29, 2000. 461 Mich 590; 608 NW2d 57 (2000). We reverse and remand for further findings of fact.

## I. FACTS AND PROCEEDINGS

The history of this worker's compensation case is lengthy and tangled, and obfuscates even such basic matters as what issues are and are not before this Court. Plaintiff worked at defendant's Wright Street plant in Cadillac. In 1982, plaintiff suffered a partial disability of the bilateral upper extremities caused by her employment as a sewer of automobile seatcovers and aggravated by favored work as a housekeeper. This Court has already related the details of plaintiff's injury in its previous decision on this case, *Sell v Mitchell Corp (On Remand)*, 198 Mich App 683, 689; 499 NW2d 413 (1993) (*Sell I.*) Defendant does not now dispute the nature or severity of plaintiff's injuries. However, defendant disputes plaintiff's entitle-

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

ment to continuing wage-loss benefits because she refused to accept an offer of light-duty work at the Wright Street plant that was within her physical capabilities until after the Wright Street plant was closed and the position ceased to be available. We held this case in abeyance pending our Supreme Court's review of this issue in *McJunkin, supra.* The Supreme Court held that when an employee ends a period of refusal of reasonable employment, the employee becomes eligible for wage-loss benefits if the employer has withdrawn the offer of reasonable employment or the position is no longer available.

Unfortunately, our task is not a simple matter of applying the Supreme Court's decision in *McJunkin* to the facts here. The issue is complicated by another set of proceedings that arose from plaintiff's injury and disability. In addition to her efforts to obtain wage-loss benefits despite her refusal of the light-duty position, plaintiff has also been involved in protracted proceedings to obtain vocational rehabilitation benefits. This other chain of proceedings relates to plaintiff's decision in 1984 to quit the light-duty position after a short period and attend community college classes to retrain herself as a child-care provider. With regard to the vocational rehabilitation benefits, this Court ultimately decided that plaintiff could be eligible for such benefits, and remanded to the WCAC for further findings of fact. The WCAC found in plaintiff's favor, and defendant has not appealed that decision. It is therefore res judicata that plaintiff was entitled to vocational rehabilitation benefits, and there are no issues before this Court relating to that entitlement. However, we must, of necessity, consider if plaintiff's eligibility for vocational rehabilitation in

any way affects plaintiff's eligibility for wage-loss benefits. We therefore review the lengthy history of this case.

PLAINTIFF'S DISABILITY AND LIGHT-DUTY WORK

These proceedings began in 1984 when plaintiff first sought disability benefits from defendant. However, defendant offered plaintiff a "favored work" position of light-duty work within her physical capabilities as an attendant in the Wright Street plant first-aid room. The work involved counting small parts for inventory purposes. Plaintiff initially accepted the position in July 1984, though she complained that the job was a boring, dead-end, "made work" position. Plaintiff disliked the job and informed defendant that she intended to quit in August to attend classes at a local community college and retrain herself as a child-care provider. After a few weeks in the first-aid room, plaintiff quit and subsequently enrolled in community college. She then applied for benefits for continuing wage loss, vocational rehabilitation, and medical treatment.

PLAINTIFF'S FIRST WORKER'S COMPENSATION PETITION

On May 21, 1985, Magistrate Winston A. Wheaton found that plaintiff was partially disabled and granted her a closed period of benefits from December 3, 1983, to July 2, 1984. Magistrate Wheaton concluded, however, that plaintiff forfeited wage-loss benefits as long as she unreasonably refused defendant's bona fide offer of employment. Magistrate Wheaton also denied plaintiff's claim for vocational rehabilitation benefits. The magistrate determined that plaintiff's

enrollment in a vocational program did not excuse her refusal of the light-duty position:

> A different result might have been obtained had Plaintiff been well into her program of vocational rehabilitation before Defendant made its [light-duty] offer. While certainly Plaintiff had made inquiry and laid plans for her present course [of schooling], she was not so irretrievably committed that her return to Defendant would have presented a significant hardship.

Plaintiff appealed Magistrate Wheaton's decision to the Worker's Compensation Appeal Board (WCAB, predecessor appellate body to the WCAC), which affirmed in an opinion and order entered March 16, 1990. The WCAB concluded that plaintiff was not entitled to wage-loss benefits because she had unreasonably refused the favored work that was within her physical capability, and that she was not entitled to vocational rehabilitation benefits because she had failed to follow the statutory procedures for obtaining these benefits.

On March 23, 1990, shortly after the WCAB affirmed Magistrate Wheaton's decision, plaintiff wrote to defendant offering to return to the light-duty position at defendant's "Wright Street plant" in Cadillac. Plaintiff knew, however, that the Wright Street plant had been closed since February 1989. Defendant responded to plaintiff's letter by requiring her to submit to a medical examination to determine her physical ability to return to work. The letter did not specify that any light-duty position was being offered. Plaintiff did not attend the examination, allegedly because defendant failed to provide her with a mileage check in advance to cover the expense of driving from her

home in Manistee to the doctor's office in Grand Rapids.

Plaintiff applied to this Court for leave to appeal from the WCAB's order of March 16, 1990. Plaintiff argued that the WCAB had erred in holding that her right to vocational rehabilitation did not supersede defendant's right to mitigate its losses by offering favored work. This Court denied leave to appeal (Docket No. 127715). Plaintiff then appealed to the Michigan Supreme Court, which vacated this Court's order denying leave and remanded for this Court to decide the narrow issue of

> whether plaintiff's claim for vocational rehabilitation expenses, as stated in her petition for hearing, was sufficient to invoke the procedures for vocational rehabilitation training under MCL 418.319(1); MSA 17.237(319)(1). If so, the case should be remanded to the Workers' Compensation Appeal Board for further proceedings to determine plaintiff's right to benefits under that section. [*Sell v Mitchell Corp*, 437 Mich 976 (1991).]

The Supreme Court's remand order made no statement regarding wage-loss benefits.

On March 15, 1993, this Court held, on remand, that plaintiff's 1984 petition for hearing was legally sufficient to invoke the procedures for vocational rehabilitation training pursuant to subsection 319(1) because she claimed entitlement to reimbursement for vocational rehabilitation expenses and she was at that time unable to perform the favored work of housekeeping as a result of her disability. *Sell I, supra*, 689. This Court reversed and remanded to the WCAC for further proceedings to determine plaintiff's rights to vocational benefits. *Id.* The Court further directed the WCAC "to balance [plaintiff's] right to such vocational

rehabilitation training *with defendant's right to miti-gate compensation payments by offering her favored work*, MCL 418.301(5)(a); MSA 17.237(301)(5)(a)." *Id.* (emphasis added). The Court further explicated:

> In doing so, the WCAB [sic] should consider the following factors: (1) was the offer of favored work reasonable and made in good faith; (2) what type of work was offered to the employee; (3) is there potential for future advancement for the employee in light of the favored work offered and the employee's physical disabilities; (4) is the favored work within the employee's physical capacity to perform; (5) does the employee have the necessary training or experience to perform the favored work; (6) does the employee have good and reasonable cause to refuse to perform the favored work; (7) has the employee taken specific steps towards obtaining vocational rehabilitation training; and (8) will such vocational rehabilitation training enable the employee to be restored to useful employment? [*Id.*, 689-690.]

In sum, this Court held that plaintiff had invoked necessary procedures to obtain vocational benefits, but remanded for factual determinations with respect to plaintiff's eligibility for the benefits. This Court directed the WCAC to take into account eight factors that balance the employer's right to mitigate damages through offering reasonable employment against the employee's right to retrain herself for other vocational opportunities. The Court thus recognized that plaintiff's eligibility for vocational benefits to some extent depended on the reasonableness of her decision to seek vocational training in lieu of accepting the light-duty position.

On February 2, 1996, the WCAC issued its opinion and order on remand from this Court. The WCAB considered the factors outlined by this Court and con-

cluded that "plaintiff's course of vocational rehabilitation training by attending classes at Westshore Community College was 'reasonably necessary to restore [her] to useful employment,' as provided in subsection 319(1)." The WCAC noted, however, that the limited nature of its inquiry precluded its reaching any decision regarding the wage-loss benefits and defendant's offer of light-duty employment:

> While the offer of reasonable employment is significantly reflected in our deliberations, the only question before us is plaintiff's entitlement to vocational rehabilitation, an entirely different issue from that before the ALJ and Appeal Board, whose decisions are not ours to review.

Defendant did not appeal this decision; therefore, plaintiff's entitlement to vocational rehabilitation benefits is res judicata.

### PLAINTIFF'S APPLICATION FOR WAGE-LOSS BENEFITS

Meanwhile, during the pendency of her appeal to this Court and this Court's remand to the WCAB with regard to the issue of vocational rehabilitation benefits, plaintiff filed two more petitions with the bureau. These petitions primarily concerned plaintiff's right to wage-loss benefits in light of her belated acceptance of the light-duty position and the plant closure that effectively eliminated this position. At this point, the litigation began to follow two tracks: one involving wage-loss benefits (the subject of the appeal here) and the other involving entitlement to vocational rehabilitation benefits (resolved by the February 2, 1996, WCAB opinion on remand from this Court). We have already reviewed the events and procedures relating to the vocational rehabilitation benefits. We

now study the magistrate's and WCAB's decisions pertaining to plaintiff's claim for wage-loss benefits.

On May 22, 1990, plaintiff filed another petition for a hearing, claiming that she was seeking reimbursement for vocational rehabilitation training, and reinstatement of her wage-loss benefits because of "the employer's silence" regarding her March 1990 offer to return to work. On January 5, 1993, while the remand for the March 21, 1990, WCAB decision was pending in this Court, plaintiff filed a third petition for hearing with the bureau. Plaintiff made the same claims as before, but added that wage-loss benefits should be reinstated because defendant "went out of business in 1990 and has therefore retracted any offer of favored work." It appears from the record, however, that defendant did not actually "go out of business," but rather that defendant closed the Wright Street plant in Cadillac, where plaintiff had been offered the light-duty job in the first-aid room.

On January 3, 1996, Magistrate Michael D. Wagner conducted a hearing to address plaintiff's claim (apparently pursuant to her January 5, 1993, petition for hearing) for reinstatement of her wage-loss benefits as a result of her March 1990 offer to return to work and defendant's "silence" regarding the matter. At the hearing, plaintiff testified that she had not been employed since leaving defendant's employ in 1984, and that, at the time she sent her letter, she was aware that defendant's Wright Street plant in Cadillac had closed but she knew that a plant in Benzonia (which was actually closer to her home than the Wright Street plant) was still in operation. Plaintiff further testified that she had received the letter from defendant indicating that she was to submit to a med-

ical examination in Grand Rapids, but that defendant failed to send a mileage check to cover her travel expense from her home in Manistee. Her attorney advised her not to keep the appointment unless she received a mileage check. Plaintiff testified that she did not appear for the examination and that she never heard anything more from defendant. On cross-examination, plaintiff conceded that neither she nor her attorney had contacted defendant about the missing mileage check. Defendant claimed that it was not aware until May 1995 that the reason plaintiff failed to appear at the medical examination was because of a missing mileage check. On redirect examination, plaintiff verified that on a previous occasion she had appeared for a medical examination when she was provided with a mileage check from defendant.

In an opinion and order mailed on February 5, 1996, Magistrate Wagner stated:

> Based upon a review of the record, which includes Plaintiff's testimony and the exhibits which were introduced at trial, I find that it is not reasonable to expect Defendant Mitchell Corporation to keep an offer of favored work open more than five and-a-half years [sic] after Plaintiff's refusal to perform that job. This is particularly true in this case given the fact that the Wright Street Plant was closed approximately one year before Plaintiff's request to return to favored work there.

> I question Plaintiff's good faith concerning her desire to return to work given the number of years which passed following her refusal of that job as well as her awareness that the job was no longer available due to the plant closing one year before. It is also instructive to note that she never informed Mitchell Corporation that the reason she did not attend the medical examination that they set up for her with Dr. Duffin was because she was not provided a mileage reimbursement check.

\*   \*   \*

> Therefore, I find that Plaintiff has permanently forfeited her rights to wage loss benefits in this case. Further wage loss benefits are denied.

Plaintiff appealed Magistrate Wagner's February 5, 1996, decision to the WCAC, and, in May 1996, plaintiff also filed a petition for a Rule 5 hearing, claiming that the earlier decisions granting vocational rehabilitation benefits necessarily meant that she had not unreasonably refused defendant's offer of light-duty work and that her wage-loss benefits should be reinstated.

In an opinion and order mailed October 7, 1997, Magistrate Wagner found that plaintiff was not entitled to a Rule 5 hearing and concluded that, contrary to plaintiff's assertions, this Court's 1993 opinion and the WCAC's February 2, 1996, opinion, both of which dealt solely with the issue of vocational rehabilitation benefits, "did not over rule [sic] Magistrate Wheaton's 1985 decision ordering forfeiture of weekly benefits."

Plaintiff appealed to the WCAC from the October 7, 1997, decision, and the WCAC consolidated that appeal with plaintiff's appeal from Magistrate Wagner's February 5, 1996, decision. In an opinion and order entered June 9, 1998, the WCAC ruled as follows:

> The [February 3,] 1996 decision of the Appellate Commission addressed one question and one question only. That question was reimbursement of vocational rehabilitation expenses. The Appellate Commission expressly limited its decision to that question and the decision was not appealed. It is therefore our opinion, based upon the plain language of the statute, *Morrison [v South Macomb Hospital,* 1994 ACO #293], and the original WCAC opinion in this matter, that Magistrate Wagner's 1996 decision is not superseded by the Appellate Commission decision.

Regarding the issue of wage-loss benefits, the WCAC found that Magistrate Wagner's factual finding that plaintiff had not evinced any legitimate intention to return to defendant's employ was supported by competent, material, and substantial evidence. The WCAC, therefore, affirmed Magistrate Wagner's 1996 and 1997 decisions. We granted plaintiff's application for leave to appeal the WCAC June 9, 1998, decision.

II. ANALYSIS

Plaintiff contends that

[t]he sole legal question is whether or not the Plaintiff-Appellant was entitled to continuing weekly wage loss indemnity benefits upon the Court of Appeals' and WCAC's factfinding decisions in 1993 and 1996 that her "leaving" of favored employment in order to seek vocational retraining benefits was reasonable under all the circumstances.

Plaintiff contends that this finding entitles her to wage-loss benefits notwithstanding her rejection of the light-duty assignment.

Plaintiff casts this issue entirely as a question whether she was entitled to continuing wage-loss benefits after leaving the light-duty position in order to pursue community college retraining as a child-care worker. Plaintiff argues that it was reasonable for her to reject the menial "make-work" position in order to retrain for a more meaningful occupation, and that the law does not require her to forfeit wage-loss benefits in order to do so. However, plaintiff does not seek wage-loss benefits only for the period when she was enrolled in a vocational program, but for the entire period since 1984. Plaintiff left defendant's employment in 1984 to study child care at a commu-

nity college. The record does not indicate how long she was in the program, or what she has done since to pursue child-care work, but we can reasonably infer that she has not been enrolled in this program for sixteen years. In any event, the worker's compensation act provides for only fifty-two weeks of vocational rehabilitation, with the possibility of fifty-two additional weeks on approval of the bureau director. MCL 418.319; MSA 17.237(319). We therefore consider plaintiff's appeal in two stages: (1) whether plaintiff remained eligible for wage-loss benefits during the time she sought vocational rehabilitation and (2) whether she remained (or became) eligible for benefits once she decided to accept the job in the first-aid room one year *after* the plant closed and the job ceased to exist.

Findings of fact made or adopted by the WCAC are conclusive on appeal, absent fraud, if there is any competent evidence in the record to support them. Const 1963, art 6, § 28; *Layman v Newkirk Electric Associates, Inc*, 458 Mich 494, 498; 581 NW2d 244 (1998). However, a decision of the WCAC is subject to reversal if it operated within the wrong legal framework or its decision was based on erroneous legal reasoning. *Bates v Mercier*, 224 Mich App 122, 124; 568 NW2d 362 (1997).

### A. WAGE-LOSS BENEFITS DURING VOCATIONAL REHABILITATION PERIOD

Plaintiff's eligibility for wage-loss benefits during the period in which she was enrolled at the community college depends on the interplay between two sections of the Worker's Disability Compensation Act. MCL 418.319(1); MSA 17.237(319)(1) governs a dis-

abled employee's eligibility for vocational rehabilitation:

> (1) An employee who has suffered an injury covered by this act shall be entitled to prompt medical rehabilitation services. *When as a result of the injury he or she is unable to perform work for which he or she has previous training or experience, the employee shall be entitled to such vocational rehabilitation services, including retraining and job placement, as may be reasonably necessary to restore him or her to useful employment.* . . . Vocational rehabilitation training, treatment, or service shall not extend for a period of more than 52 weeks except in cases when, by special order of the director after review, the period may be extended for an additional 52 weeks or portion thereof.

MCL 418.301(5); MSA 17.237(301)(5) governs a disabled employee's eligibility for wage-loss benefits after refusing an offer of employment:

> (5) If disability is established pursuant to subsection (4), entitlement to weekly wage loss benefits shall be determined pursuant to this section and as follows:
>
> (a) If an employee receives a bona fide offer of reasonable employment from the previous employer, another employer, or through the Michigan employment security commission and the employee refuses that employment without good and reasonable cause, the employee shall be considered to have voluntarily removed himself or herself from the work force and is no longer entitled to any wage loss benefits under this act during the period of such refusal.

"Reasonable employment" is defined as

> work that is within the employee's capacity to perform that poses no clear and proximate threat to that employee's health and safety, and that is within a reasonable distance from that employee's residence. The employee's capacity to perform shall not be limited to jobs in work suitable to his

or her qualifications and training. [MCL 418.301(9); MSA 17.237(301)(9).]

With these reasonable employment provisions, the Legislature partially codified the judicially created "favored-work doctrine." *Pulver v Dundee Cement Co*, 445 Mich 68, 74; 515 NW2d 728 (1994). Wages from favored work may be used as a setoff against an employer's worker's compensation liability. *Michales v Morton Salt Co*, 450 Mich 479, 487, n 10; 538 NW2d 11 (1995); MCL 418.361(1); MSA 17.237(361)(1). Though the primary purpose of the doctrine is mitigation, it simultaneously serves a rehabilitative function. *Id.*

This Court has held that the remedies offered in subsection 319(1) and subsection 301(5) are symmetrical and nonconflicting; the former merely provides an injured employee the right to receive vocational training and rehabilitation, while the latter operates to give the employer a similar remedy for initiating a determination of the injured employee's ability to work. *Christiansen v Eaton, Yale & Towne, Inc*, 89 Mich App 440, 445; 280 NW2d 463 (1978). The fact that an employee is only partially, rather than totally, disabled does not preclude an award of vocational rehabilitation benefits. *Barrett v Bohn Aluminum & Brass Co*, 69 Mich App 636, 641-642; 245 NW2d 147 (1976). Vocational rehabilitation benefits are intended to induce injured workers to re-equip themselves for the labor market; hence, in order to maintain this inducement, rehabilitation benefits do not affect the right of an employee to receive partial disability benefits under MCL 418.361; MSA 17.237(361). *Id.*; *Frammolino v Richmond Products Co*, 79 Mich App 18, 28; 260 NW2d 908 (1977). Accordingly, an injured

worker's time spent in retraining is a factor to be taken into account in assessing the claimant's wage-earning capacity, but does not preclude wage-loss benefits. *Id.*

Given the foregoing statutory language and case law, the WCAC erred at least to the extent that it addressed plaintiff's claim for vocational rehabilitation benefits and defendant's claim that plaintiff had unreasonably refused its offer of light-duty work in isolation. In its 1993 opinion in this case, this Court stated that plaintiff's right to vocational rehabilitation training must be "balanced" with defendant's right to mitigate compensation payments by offering her light-duty work. *Sell I, supra,* 689. In *Sell I,* this Court held that a claimant might be entitled to rehabilitation benefits, despite the availability of reasonable employment, if, under the balancing test, it was reasonable for the claimant to opt for vocational retraining instead of the offered employment. We conclude that the converse also is true: a claimant who reasonably opts for vocational retraining in lieu of an employment offer might still be entitled to wage-loss benefits. The same balancing test applies.

This "balancing" requires consideration of the following nonexclusive list of factors:

> (1) was the offer of favored work reasonable and made in good faith; (2) what type of work was offered to the employee; (3) is there potential for future advancement for the employee in light of the favored work offered and the employee's physical disabilities; (4) is the favored work within the employee's physical capacity to perform; (5) does the employee have the necessary training or experience to perform the favored work; (6) does the employee have good and reasonable cause to refuse to perform the favored work; (7) has the employee taken specific steps

towards obtaining vocational rehabilitation training; and (8) will such vocational rehabilitation training enable the employee to be restored to useful employment? [Id., 689-690.]

Clearly, these factors concern both a claimant's duty to accept reasonable employment and the right to vocational rehabilitation training benefits.[1] Accordingly, plaintiff's decision to participate in a vocational rehabilitation program might constitute "good and reasonable cause" to refuse an offer of reasonable employment.

Here, when deciding plaintiff's 1996 petition for wage-loss benefits, the magistrate did not make findings of fact pertaining to plaintiff's decision to reject the job in the first-aid room and participate in a vocational rehabilitation program. We therefore remand for the limited purpose of determining if plaintiff's decision was reasonable in light of the above-quoted factors. Ideally, the magistrate and the WCAC should determine the reasonableness of a claimant's choice between reasonable employment and vocational rehabilitation as one issue, in one proceeding.[2] However,

---

[1] In finding that Magistrate Wagner's 1996 decision denying wage-loss benefits was not superseded by subsequent decisions in this matter, the WCAC relied in part on *Morrison v South Macomb Hosp*, 1994 ACO 293. However, *Morrison* is inapposite to the facts of this case. In *Morrison*, the WCAC held that a worker who has lost the right to wage-loss benefits because of the refusal of reasonable employment may still be entitled to vocational rehabilitation benefits. Here, however, the issue is whether a worker who qualifies for vocational retraining may still be entitled to wage-loss benefits during the period of rehabilitation, if her participation in a rehabilitation program precludes or limits her acceptance of reasonable employment.

[2] Plaintiff argues in this appeal that the WCAC's previous ruling (February 2, 1996) that she was entitled to vocational rehabilitation benefits should be construed as a ruling also that her decision to reject defendant's employment offer in order to enroll in community college was reasonable.

because of the peculiar protracted and bifurcated history of plaintiff's case, this did not happen here. Consequently, although the WCAC already determined on February 2, 1996, that plaintiff's decision was reasonable such that it did not preclude her receipt of vocational benefits, we need to remand for a separate determination whether plaintiff's decision was reasonable such that it did not preclude her receipt of wage-loss benefits.

Additionally, the magistrate must make findings of fact with respect to the duration of the program and the daily hours plaintiff spent in the program. Obviously, if there was any period in which plaintiff was not enrolled in a vocational program, but in which she refused available reasonable employment, she cannot receive wage-loss benefits on the ground that she opted for vocational retraining instead of work. We note that § 319 specifically limits the duration of the reimbursable rehabilitation period to fifty-two weeks, except in cases where, by special order of the bureau director, the period may be extended up to an additional fifty-two weeks. Therefore, plaintiff's vocational rehabilitation cannot excuse her refusal of reasonable employment for a period longer than fifty-two weeks. With respect to the daily hours plaintiff spent in the program, the magistrate should determine plaintiff's wage-earning capacity during this period of

---

We recognize some logical merit to plaintiff's argument. However, it is the law of the case here that the Supreme Court remanded to this Court to decide the narrow issue of rehabilitation benefits, and that this Court in turn remanded to the WCAC to decide only plaintiff's entitlement to rehabilitation benefits. Under these circumstances, we cannot infer from the WCAC's decision that plaintiff is entitled to wage-loss benefits as well as rehabilitation benefits.

rehabilitation with an adjustment made to reflect the time spent retraining. *Frammolino, supra.*

## B. WAGE-LOSS BENEFITS FOLLOWING PLANT CLOSURE

As we stated above, plaintiff's refusal of the light-duty assignment in order to pursue a vocational rehabilitation program would have been reasonable only at times she was actually matriculating in the program. Once plaintiff completed the program, she would not be entitled to wage-loss benefits if she continued to refuse a reasonable employment offer. We have remanded to the magistrate for findings of fact relevant to this matter.

However, the issue of plaintiff's eligibility for wage-loss benefits after she completed the vocational program is further complicated by the fact that plaintiff tried to accept defendant's offer *after* the Wright Street plant had closed and the light-duty job was eliminated. This raises the question whether plaintiff's belated acceptance constitutes a permanent forfeiture of her right to wage-loss benefits. Our Supreme Court recently addressed this issue in *McJunkin, supra.* There, the disabled plaintiff refused his employer's light-duty work offer in July 1992 because he believed that his surgeon advised against it. *McJunkin, supra,* 593. The following February, the plaintiff heard his surgeon testify in a deposition that the plaintiff probably would have been able to perform the light-duty job. *Id.,* 594. The plaintiff then notified his employer that he would accept the light-duty assignment, but his acceptance was too late because the position was no longer available. *Id.* The Supreme Court held that the plaintiff's delayed acceptance did not bar the receipt of wage-loss benefits because "[t]here is no

provision in the WDCA for an employee's permanent forfeiture of benefits as a result of unreasonably refusing an offer of reasonable employment." *Id.*, 598. The Court further stated:

> [W]e hold that the elapsed time before an employee attempts to end a period of refusal is irrelevant to the renewal of benefits. Pursuant to the clear and plain meaning of subsection 301(5)(a), an employee need only end the period of unreasonable refusal to trigger renewal of benefits. [*Id.*, 600.]

Applying *McJunkin* here, plaintiff could have renewed her eligibility for wage-loss benefits by ending her unreasonable refusal of the light-duty position, notwithstanding the unavailability of the light-duty position

However, there are questions of fact regarding whether plaintiff actually ended the period of refusal and whether the light-duty position ceased to be available. As discussed above, plaintiff advised defendant of her availability to work, but failed to comply with defendant's instructions to report for a physical. Plaintiff alleges that she did not go to the physical because her employer would not reimburse her for travel expenses, but plaintiff never inquired about a reimbursement check. On remand, the magistrate should make findings of fact with respect to whether plaintiff's conduct actually constitutes acceptance of defendant's offer. Moreover, the record does not reveal if defendant was still able to offer plaintiff favored work. Although the Wright Street plant was closed, defendant was still operating a facility in Benzonia. It is not known if light-duty work was available for plaintiff in the Benzonia facility. On remand, the magistrate should determine if a position

was available and if plaintiff took reasonable steps to accept it. (Defendant contends in its brief that plaintiff "limited her acceptance to work at the Wright Street plant"; the magistrate should make a finding of fact regarding this contention.)

Additionally, the magistrate on remand should make findings of fact regarding plaintiff's employment since leaving or completing the vocational program. Plaintiff concedes in her brief that defendant is entitled to offset wage-loss benefits against any earnings plaintiff has received from other work. Plaintiff is entitled only to compensation for a reduction in her earning capacity if she can establish that the reduction is causally linked to the work-related injury. *Haske v Transport Leasing, Inc*, 455 Mich 628, 665; 566 NW2d 896 (1997). Accordingly, the magistrate should make findings of fact with respect to plaintiff's wage losses and their relation to the injury she sustained while working for defendant.

Reversed and remanded to the magistrate for further findings of fact. We do not retain jurisdiction.