ROMERO v BURT MOEKE HARDWOODS, INC

Docket No. 271122. Submitted November 15, 2007, at Detroit. Decided
July 29, 2008, at 9:00 a.m. Leave to appeal sought.

Pablo Gutierrez Romero, an employee of Burt Moeke Hardwoods,
Inc. (Hardwoods), was injured in a work-related accident in
Michigan while training to be a millwright. Romero, a Mexican
citizen, had been recruited in Mexico by Hardwoods with the
intention that following the training he would return to Mexico to
work in a sawmill that Hardwoods intended to open in Mexico.
Hardwoods had assisted Romero in obtaining a work visa for such
purposes. Romero was unable to continue his training as a result
of the injury and, when his visa eventually expired, he returned to
Mexico and took lower-paying employment in the electronics field,
but he was unable to keep working because of pain and swelling
associated with his injury. A workers' compensation magistrate
awarded Romero benefits, and Hardwoods and its insurer, Acci-
dent Fund Insurance Company of America, appealed to the Work-
ers' Compensation Appellate Commission (WCAC), which af-
firmed the award of benefits. The Court of Appeals, SAAD, P.J., and
CAVANAGH and DONOFRIO, JJ., denied the defendants' application for
leave to appeal in an unpublished order, entered February 13, 2006
(Docket No. 264909). The defendants sought leave to appeal in the
Supreme Court and the Supreme Court, in lieu of granting leave,
remanded the matter to the Court of Appeals for consideration as
on leave granted. 475 Mich 883 (2006).

The Court of Appeals *held*:

1. The magistrate and the WCAC did not err in holding that
Romero is disabled under MCL 418.301(4) and in determining that
the injury reduced his "maximum" reasonable wage-earning abil-
ity in work suitable to his qualifications and training. The magis-
trate and the WCAC were not required to consider the "universe of
jobs" suitable to Romero's qualifications and training, only those
that produce the maximum income.

2. Romero proved that his wage loss is attributable to his
work-related injury, not the expiration of his visa.

3. Romero has not attempted to avoid an offer of reasonable
employment in bad faith.

4. The record supports the determination of the WCAC that Romero left the United States because his visa had expired.

5. The award of specific-loss benefits for the loss of usefulness of his leg was supported by competent evidence and must be affirmed.

Affirmed.

1. WORKERS' COMPENSATION — WORDS AND PHRASES — DISABILITY.

The Worker's Disability Compensation Act defines "disability" as a limitation of an employee's wage-earning capacity in work suitable to his or her qualifications and training from a personal injury or work-related disease; an employee is disabled if he or she suffers an injury that results in a reduction of that person's maximum reasonable wage-earning ability in work suitable to that person's qualifications and training (MCL 418.301[4]).

2. WORKERS' COMPENSATION — ALIENS.

Aliens in the United States who work in the service of another under any contract of hire are employees under the Worker's Disability Compensation Act and are eligible for benefits where they establish a work-related disability that has resulted in wage loss (MCL 418.161[1][*l*], 418.301[4]).

*Reamon Fotieo Szczytko & House* (by *Themis J. Fotieo*) and *Evans, Portenga & Slater* (by *John A. Braden*) for the plaintiff.

*Lacey & Jones* (by *Gerald M. Marcinkoski*) for the defendants.

Before: SAAD, P.J., and JANSEN and BECKERING, JJ.

BECKERING, J. This matter is before us on remand from the Supreme Court for consideration as on leave granted. Defendants appeal a decision of the Workers' Compensation Appellate Commission (WCAC) affirming the magistrate's decision to award plaintiff benefits. We affirm.

Otis Fahl, a representative of defendant Burt Moeke Hardwoods, Inc. (Hardwoods), recruited plaintiff Pablo

Gutierrez Romero, a Mexican citizen, to train as a millwright in the United States. Fahl informed plaintiff that following the training, Hardwoods would employ plaintiff in a sawmill the company intended to open in Mexico. After recruiting plaintiff, Hardwoods assisted him in obtaining a work visa and he began training as a millwright in the United States. During training, a forklift crushed plaintiff's right leg, necessitating surgery and several months of hospital recuperation. As a result of the injury, plaintiff was unable to complete millwright training. Hardwoods continued to employ plaintiff and obtained limited extensions of his visa, but the visa eventually expired. Plaintiff subsequently returned to Mexico and obtained employment working on electronics. But, because of pain and swelling associated with his leg injury, plaintiff was unable to keep working. Plaintiff cannot stand for more than an hour, squat, or climb a ladder without severe pain. He walks with a significant limp and falls down on occasion.

After plaintiff successfully petitioned for workers' compensation benefits, defendants appealed to the WCAC. The WCAC affirmed the award. Defendants then sought leave to appeal in this Court. We denied defendants' application for leave to appeal. *Romero v Burt Moeke Hardwoods Inc*, unpublished order of the Court of Appeals, entered February 13, 2006 (Docket No. 264909). On application for leave to appeal in the Supreme Court, the matter was remanded to this Court for consideration as on leave granted. *Romero v Burt Moeke Hardwoods, Inc*, 475 Mich 883 (2006).

When this Court reviews a decision of the WCAC, it does not begin by considering the magistrate's decision, but looks first to the decision of the WCAC. *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691, 709; 614 NW2d 607 (2000). The WCAC is charged with ensuring

that the findings of fact in a workers' compensation case are supported by the requisite evidence. *Id.* at 730. It must determine whether the magistrate's decision is supported by competent, material, and substantial evidence by reviewing the entire record and performing a qualitative and quantitative analysis of all the evidence presented. *Id.* at 699; MCL 418.861a(4), (13). The WCAC is authorized by MCL 418.861a(14) to "make independent findings of fact, regarding issues that have been addressed or overlooked by the magistrate, as long as the record is sufficient for administrative review and does not prevent the WCAC from reasonably exercising its reviewing function without resort to speculation." *Mudel, supra* at 730.

If any evidence supports the WCAC's factual findings and if the WCAC did not misapprehend its administrative appellate role in reviewing the magistrate's decision, then this Court must treat the WCAC's factual findings as conclusive. *Id.* at 709-710. As our Supreme Court expressed in *Holden v Ford Motor Co*, 439 Mich 257, 269; 484 NW2d 227 (1992):

> If it appears on judicial appellate review that the WCAC carefully examined the record, was duly cognizant of the deference to be given to the decision of the magistrate, did not "misapprehend or grossly misapply" the substantial evidence standard, and gave an adequate reason grounded in the record for reversing the magistrate, the judicial tendency should be to deny leave to appeal or, if it is granted, to affirm, in recognition that the Legislature provided for administrative appellate review by the seven-member WCAC of decisions of thirty magistrates, and bestowed on the WCAC final fact-finding responsibility subject to constitutionally limited judicial review.

This Court reviews de novo of questions of law involved with any final order of the WCAC. MCL 418.861a(14); *DiBenedetto v West Shore Hosp*, 461 Mich

394, 401; 605 NW2d 300 (2000). The WCAC's decision may be reversed if it operated within the wrong legal framework or based its decision on erroneous legal reasoning. *Id.* at 401-402.

I

Defendants first argue that the WCAC misapplied *Sington v Chrysler Corp*, 467 Mich 144; 648 NW2d 624 (2002), by engaging in a "reasonable employment" analysis under MCL 418.301(5) without first making a proper determination regarding disability under MCL 418.301(4). According to defendants, in finding that plaintiff suffered a "disability" as defined in MCL 418.301(4), the WCAC failed to consider "the universe of jobs" suitable to plaintiff's qualifications and training as required by *Sington, supra*. We disagree.

A claimant in a workers' compensation matter must establish a work-related disability and entitlement to benefits by a preponderance of the evidence. MCL 418.851; *Aquilina v Gen Motors Corp*, 403 Mich 206, 211; 267 NW2d 923 (1978). MCL 418.301(4) defines "disability" as "a limitation of an employee's wage earning capacity in work suitable to his or her qualifications and training resulting from a personal injury or work related disease." In *Sington, supra* at 155, our Supreme Court found that the plain language of this provision "indicates that a person suffers a disability if an injury covered under the WDCA [Worker's Disability Compensation Act] results in a reduction of that person's maximum reasonable wage earning ability in work suitable to that person's qualifications and training." Thus, if because of a work-related injury an employee can no longer perform one specific job that pays the maximum salary in light of the employee's qualifications and training, but the employee can per-

form an equally well-paying job that is suitable to his or her qualifications and training, the employee is not disabled. *Id.*

The *Sington* Court instructed that in determining whether an employee is disabled under MCL 418.301(4), the magistrate and the WCAC "should consider whether the [work-related] injury has actually resulted in a loss of wage earning capacity in work suitable to the employee's training and qualifications in the ordinary job market." *Id.* at 158. In making this determination, the magistrate and the WCAC may inquire into "the particular work that an employee is both trained and qualified to perform, whether there continues to be a substantial job market for such work, and the wages typically earned for such employment in comparison to the employee's wage at the time of the work-related injury." *Id.* at 157. The Court further noted that "the focus of the inquiry is not on every single job suitable to an employee's qualifications and training—only those that produce the maximum income." *Id.* at 160. An employee is disabled if he or she "is no longer able to perform any of the jobs that pay the maximum wages, given the employee's training and qualifications . . . ." *Id.* at 157.[1]

---

[1] Our Supreme Court recently held that in order to establish a prima facie case of disability under *Sington, supra,* the employee must show more than an inability to perform a previous job. *Stokes v Chrysler LLC,* 481 Mich 266, 281; 750 NW2d 129 (2008). Rather, the employee must prove a work-related injury and that the injury caused a reduction of his or her maximum wage-earning capacity in work suitable to his or her qualifications and training. *Id.* The *Stokes* Court held that to establish the latter element, the employee must complete four steps: (1) the employee must fully disclose his or her qualifications and training; (2) the employee must consider other jobs that pay his or her maximum preinjury wage to which the employee's qualifications and training translate; (3) the employee must show that his or her work-related injury prevents him or her from performing some or all of the jobs identified as

In this case, we cannot conclude that the magistrate and the WCAC erred in determining plaintiff disabled under MCL 418.301(4). The magistrate and the WCAC properly applied *Sington, supra,* in reaching this conclusion and their factual findings were supported by the record. Plaintiff presented evidence that he was trained and qualified to work on electronics and that he was training to be a millwright at the time of his injury. During millwright training, plaintiff earned the highest wage he had ever earned. But, because of his injury, plaintiff was unable to complete the training. It is undisputed that plaintiff is now unable to work as a millwright. After plaintiff's injury, Hardwoods continued to give him "odd jobs." Hardwoods paid plaintiff the same hourly wage that he earned during millwright training, but he worked fewer hours. Upon returning to Mexico, plaintiff obtained employment working on electronics, earning substantially less than he made during millwright training. Because of complications from his injury, however, plaintiff was unable to keep the job.

Considering the evidence presented by plaintiff that he earned his highest wage during millwright training and that he is only trained and qualified to perform lesser-paying work, the magistrate and the WCAC properly determined that plaintiff's injury reduced his "maximum reasonable wage earning ability" in work suitable to his qualifications and training. *Sington, supra* at 155. Contrary to defendants' argument on appeal, the magistrate and the WCAC need not consider the "universe of jobs" suitable to plaintiff's qualifications and training, only those that produce the maximum income. *Id.* at 160. To the extent that the WCAC

within his or her qualifications and training that pay his or her maximum wages; and (4) if the employee is capable of performing some or all of the jobs identified, the employee must show that he or she cannot obtain any of those jobs. *Id.* at 281-283.

erred in stating that "a full *Sington* review is not appropriate in this case," any error in this regard was harmless because the evidence presented established that plaintiff is disabled under MCL 418.301(4).

II

Defendants next argue that the magistrate and the WCAC erred in awarding plaintiff wage-loss benefits because plaintiff has not demonstrated that his wage loss is attributable to his work-related injury. Defendants attribute plaintiff's wage loss to the expiration of the visa allowing him to work in the United States, not to his injury. We disagree.

Aliens in the United States who work in the service of another under any contract of hire are employees under the WDCA and are eligible for benefits. MCL 418.161(1)(*l*); *Sanchez v Eagle Alloy, Inc*, 254 Mich App 651, 661-663; 658 NW2d 510 (2003). In order to be entitled to wage-loss benefits under the WDCA, an employee must establish a work-related disability under MCL 418.301(4) and demonstrate that the disability resulted in a wage loss. *Sington, supra* at 160 n 11; *Haske v Transport Leasing, Inc*, 455 Mich 628, 642-643; 566 NW2d 896 (1997), overruled in part in *Sington, supra* at 146. In *Haske, supra* at 654, our Supreme Court stated that even if an employee establishes a disability, he or she must further prove wage loss because, pursuant to the second sentence of MCL 418.301(4), "[t]he establishment of disability does not create a presumption of wage loss." Additionally, the employee's unemployment or reduced wages must be causally linked to the work-related disability. *Id.* at 658. See also *Sweatt v Dep't of Corrections*, 468 Mich 172, 186; 661 NW2d 201 (2003) (opinion by MARKMAN, J.)

(stating that "there must be a linkage between the disabling work-related injury and the reduction in pay").

The portion of *Haske* requiring proof of wage loss and a causal connection between the disability and the wage loss was not overruled by *Sington*. In addressing the import of the second sentence of MCL 418.301(4), that "[t]he establishment of disability does not create a presumption of wage loss," the *Sington* Court stated, in part:

> [T]he second sentence [of MCL 418.301(4)] reflects an understanding that there may be circumstances in which an employee, despite suffering a work-related injury that reduces wage earning capacity, does not suffer wage loss. For example, an employee might suffer a serious work-related injury on the last day before the employee was scheduled to retire with a firm intention to never work again. In such a circumstance, the employee would have suffered a disability, i.e., a reduction in wage earning capacity, but no wage loss because, even if the injury had not occurred, the employee would not have earned any further wages. [*Sington, supra* at 160-161.]

Defendants characterize plaintiff as the functional equivalent of a retiree, asserting that plaintiff "can 'never work again' until he obtains another visa that would allow him to work again in this country. Like the retiree in *Sington*'s example, plaintiff has no wages to replace in the United States." But, this case is factually distinguishable from the illustration in *Sington*. In that illustration, the employee was injured just before retirement. *Id*. at 160. He had no intention of ever working again, and even in the absence of the injury he would not have earned further wages. *Id*. at 160-161. In this case, plaintiff was 21 years old when he was injured and was training for a future job as a millwright. Hardwoods was training plaintiff with the intent to employ

him as a millwright in Mexico. But, because of his injury, plaintiff is now unable to work as a millwright in the United States or Mexico. While defendants are correct that plaintiff cannot legally work in the United States without a valid visa, plaintiff could have earned wages as a millwright in Mexico had the injury not occurred. Therefore, contrary to defendants' assertion, there is a causal connection between plaintiff's work-related injury and wage loss.

The additional cases relied on by defendants, *Reinforced Earth Co v Workers' Compensation Appeal Bd (Astudillo)*, 570 Pa 464; 810 A2d 99 (2002), and *Cenvill Dev Corp v Candelo*, 478 So 2d 1168 (Fla App, 1985), are also distinguishable from this case. In those cases, the claimants were never legal aliens and their wage loss was attributable to their illegal-alien status. *Reinforced Earth, supra* at 467, 479; *Cenvill Dev, supra* at 1169-1170. In this case, plaintiff obtained a valid nonimmigrant work visa and then began training as a millwright in the United States. Hardwoods intended to open a sawmill in Mexico and employ plaintiff at that sawmill. After plaintiff's injury, Hardwoods continued to give him "odd jobs" and obtained limited extensions of his visa. But, the visa eventually expired and plaintiff returned to Mexico. As we previously explained, plaintiff could have worked as a millwright in Mexico had the injury not occurred. Therefore, plaintiff's wage loss is attributable to his work-related injury, not the expiration of his visa.

Defendants also argue that requiring them to pay wage-loss benefits to plaintiff, to whom they cannot offer reasonable employment because he can no longer work in the United States, constitutes a denial of equal protection. While defendants are correct that an employer has the right to mitigate with an offer of reason-

able employment under MCL 418.301(5), an employer's mitigation rights are not absolute. The employer's rights must be balanced with the employee's right to refuse employment for good and reasonable cause. MCL 418.301(5); *Pulver v Dundee Cement Co*, 445 Mich 68, 80-81; 515 NW2d 728 (1994); *Sell v Mitchell Corp of Owosso*, 241 Mich App 235, 251-252; 615 NW2d 748 (2000). Whether the employer has made a bona fide offer of reasonable employment and whether the employee reasonably refused are questions of fact decided case by case. *Pulver, supra* at 80-81; *Jones-Jennings v Hutzel Hosp (On Remand)*, 223 Mich App 94, 103; 565 NW2d 680 (1997). MCL 418.301(9) defines "reasonable employment" as "work that is within the employee's capacity to perform that poses no clear and proximate threat to that employee's health and safety, and that is within a reasonable distance from that employee's residence." Further, there are many factors to consider in determining the reasonableness of an employee's refusal, including whether the employee has moved and the reasons for the move. *Pulver, supra* at 81. A bad-faith attempt to avoid reasonable employment by moving never constitutes good and reasonable cause. *Id.* at 81 n 12; *Jones-Jennings, supra* at 111.

Defendants contend that they have been deprived of their mitigation rights under MCL 418.301(5) because plaintiff cannot legally work in the United States. But, the cases on which defendants relied, *Del Taco v Workers Compensation Appeals Bd*, 79 Cal App 4th 1437; 94 Cal Rptr 2d 825 (2000), *Tarango v State Industrial Ins Sys*, 117 Nev 444; 25 P3d 175 (2001), and *Hoffman Plastic Compounds, Inc v Nat'l Labor Relations Bd*, 535 US 137; 122 S Ct 1275; 152 L Ed 2d 271 (2002), address equal-protection arguments in the context of illegal aliens, not aliens legally working in the United States at the time of their injuries. In this case, Hardwoods

employed plaintiff knowing that his visa was temporary. Plaintiff had a valid visa at the time of his injury and only returned to Mexico after attempts to renew his visa failed. It is undisputed that he can no longer legally live or work in the United States. Clearly, plaintiff has not attempted to avoid an offer of reasonable employment in bad faith. Furthermore, there is no evidence that Hardwoods has offered plaintiff employment that he is able to perform within a reasonable distance from his home in Mexico. Therefore, defendants' equal-protection argument must fail.

### III

Next, defendants argue that because the magistrate failed to make a factual finding regarding the reason for plaintiff's return to Mexico, the WCAC erred in making its own finding. We disagree.

After plaintiff's injury, Fahl's daughter accused plaintiff of sexual misconduct. The police investigated the incident and issued a warrant for plaintiff's arrest. Defendants alleged that plaintiff fled to Mexico to avoid arrest, but plaintiff testified that he was unaware of the warrant and returned to Mexico because his visa had expired. On appeal to the WCAC, defendants argued that the magistrate erred in failing to determine the reason for plaintiff's return to Mexico. The WCAC noted that the magistrate presiding over plaintiff's case was no longer on the bench at the time of its review of that decision. After reviewing the record, the WCAC determined that plaintiff returned to Mexico not to avoid arrest, but because his visa had expired.

Contrary to defendants' assertion that the WCAC conducted improper review de novo in determining the reason for plaintiff's return to Mexico, MCL 418.861a(14) specifically contemplates that the WCAC

will make findings of fact. "As long as the WCAC is presented with a record that allows it to intelligently make its own factual findings, the Legislature has declared that the WCAC is free to do so." *Mudel, supra* at 711. Here, the WCAC found sufficient evidence on the record to make a finding and determined that plaintiff left the United States because his visa had expired. Because there is record evidence to support the WCAC's finding, we will not overturn it on appeal. *Id.* at 701, 709-710.

IV

Finally, defendants challenge the award of specific-loss benefits to plaintiff, asserting that the WCAC failed to review the magistrate's award of benefits under recent caselaw that clarifies the specific loss provisions. We find no error.

Pursuant to MCL 418.361(2)(k), an employee may collect benefits for 215 weeks for the specific loss of a leg. *Cain v Waste Mgt, Inc (After Remand)*, 472 Mich 236, 241; 697 NW2d 130 (2005). The employee is entitled to compensation for a specific loss regardless of the effect on the employee's earning capacity. *Id.* at 245. In *Cain, supra*, our Supreme Court found that the term "loss" as used in MCL 418.361(2) "includes not only amputation but also loss of usefulness." *Cain, supra* at 257. The Court stated that in *Pipe v Leese Tool & Die Co*, 410 Mich 510, 527; 302 NW2d 526 (1981), it described this loss of usefulness as " 'loss of the industrial use . . . .' " *Cain, supra* at 256. But, "[t]he phrase 'loss of industrial use' does not appear anywhere in the specific loss provisions, and seems to have been intended as judicial shorthand to describe the condition of the injured member from the standpoint of its use in employment." *Id.* The *Cain* Court reiterated, however,

that specific loss may be determined "without reference to the plaintiff's earning capacity or ability to return to work." *Id.* at 257.

Here, the magistrate found that plaintiff suffered a loss of the industrial use of his leg and the WCAC affirmed this finding without explanation. The magistrate stated, in part:

> . . . Plaintiff sustained the loss of the industrial use of his right leg as a result of the injuries he sustained at [Hardwoods]. That finding is based upon Dr. [Michael J.] Forness' opinion that Plaintiff cannot perform significant physical activity with the right leg as a result of the injuries he sustained at [Hardwoods]. The photographs admitted into evidence at trial significantly demonstrate the deformities in the right leg. Dr. Forness testified that Plaintiff almost lost the leg because of the injury and he would be limited to sedentary activities with the leg and would not be able to use the leg in an industrial capacity. Therefore, Plaintiff is entitled to specific loss benefits because of the loss of industrial use of the right lower extremity.

Defendants argue that in affirming the magistrate's award of specific-loss benefits, the WCAC failed to apply the specific-loss standard articulated in *Cain, supra.* We disagree. Although the magistrate used the phrase "loss of industrial use" in awarding plaintiff benefits, there is no indication that the magistrate or the WCAC misunderstood or misapplied the specific-loss standard. As the *Cain* Court indicated, the reference to industrial use in *Pipe, supra,* "seems to have been intended as judicial shorthand" for describing the specific-loss requirement. *Cain, supra* at 256. *Cain* suggests that the phrase "loss of industrial use," although potentially misleading, can be equated with amputation or loss of usefulness. *Id.* at 256-257. Moreover, the magistrate's findings of fact, which the WCAC reviewed, were supported by compe-

tent evidence in the record pertaining to loss of usefulness and must be affirmed. *Mudel, supra* at 701, 709-710.

Affirmed.