BROWN v PREMIER MANUFACTURING COMPANY

1. Appeal and Error—Workmen's Compensation—Workmen's Compensation Appeal Board—Findings of Fact—Findings of Law.

  The Court of Appeals is bound by the findings of fact of the Workmen's Compensation Appeal Board if any evidence exists in the record to support them; however, the Court is free to correct erroneous rulings of law and may remand to the Board for factual findings essential to such rulings of law.

2. Workmen's Compensation—Favored Work—Refusal—Benefits.

  An injured employee who refuses to accept an offer of employment for "favored work" which the employee is capable of performing is not entitled to workmen's compensation benefits.

3. Workmen's Compensation—Workmen's Compensation Appeal Board—Findings.

  The Workmen's Compensation Appeal Board in reaching a decision must indicate the testimony it has adopted, the legal standard it has applied to that testimony, and the reasoning it has used in reaching its decision.

4. Workmen's Compensation—Failure to Exercise—Reasonableness—Standards.

  The following standards apply to the reasonableness of a workmen's compensation claimant's failure to follow recommended exercise: (1) the pain necessarily produced, (2) the claimant's age, and (3) the probability of benefit from the course of treatment.

5. Workmen's Compensation—Earning Capacity—Fact Issues.

  The method of determining an injured employee's earning capacity under the workmen's compensation act is a complex of fact

References for Points in Headnotes

[1] 82 Am Jur 2d, Workmen's Compensation §§ 565–569.
[2] 82 Am Jur 2d, Workmen's Compensation § 349.
[3] 82 Am Jur 2d, Workmen's Compensation § 549 et seq.
[4] 82 Am Jur 2d, Workmen's Compensation § 386.
[5] 82 Am Jur 2d, Workmen's Compensation § 367 et seq.

issues to be determined by the workmen's compensation bureau; it concerns the nature of the work performed, the continuing availability of work of that kind, the nature and extent of the disability, and the wages earned.

Appeal from the Workmen's Compensation Appeal Board. Submitted June 13, 1977, at Grand Rapids. (Docket No. 29389.) Decided August 23, 1977. Leave to appeal applied for.

Claim by Marvin Brown against Premier Manufacturing Company and Liberty Mutual Insurance Company for additional workmen's compensation benefits. A referee found that the plaintiff was not entitled to the additional benefits. The plaintiff appealed to the Workmen's Compensation Appeal Board which reversed and awarded benefits to the plaintiff. The defendants appeal by leave granted. Reversed and remanded.

*McCroskey, Libner, VanLeuven, Kortering, Cochrane & Brock* (by *Timothy J. Bott),* for plaintiff.

*Smith, Haughey, Rice & Roegge* (by *Lance R. Mather),* for defendants.

Before: M. J. KELLY, P. J., and M. F. CAVANAGH and J. R. ROOD,* JJ.

J. R. ROOD, J. This is an appeal from a decision of the Workmen's Compensation Appeal Board (hereinafter referred to as WCAB). A referee found that plaintiff was not entitled to additional benefits. The WCAB reversed and awarded plaintiff benefits in the amount of $79.84 per week, retroactive to November 18, 1974. Defendants were granted leave to appeal on October 21, 1976.

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Plaintiff was injured on October 24, 1971, in the course of his employment at Premier Manufacturing Co., when struck by a falling object on the outer aspect of his right knee. He received hospital treatment but his knee continued to give problems; in December, 1971, surgery was performed for removal of a torn cartilage. He was off work for a total period of about nine weeks.

In January, 1972, plaintiff returned to Premier subject to a restriction to stay on crutches and to sit down on the job. Plaintiff was given favored employment which he did for about two weeks with no ill effects. He was given a different job, but still favored employment which he did sitting down. Later he began standing up, supposedly because his foreman told him to do so. Thereafter, plaintiff claims his knee began to bother him and he sought medical attention. In June of 1972, plaintiff voluntarily terminated his employment stating that he was taking a job in Pontiac. He did not find a job in Pontiac and made no effort to find other work after leaving Premier.

On August 15, 1972, plaintiff filed a petition alleging the injury of October 24, 1971, and claiming disability from June 26, 1972.

Surgery was again performed on plaintiff's knee in December of 1972. He was hospitalized for five days and was in a cast for five or six weeks. The petition for compensation was dismissed on April 23, 1973, when defendants agreed to pay compensation benefits.

In September of 1973, plaintiff took a job with Lansing Heat Treat. Compensation was stopped on September 21, 1973, because of his return to work.

While working for Heat Treat plaintiff suffered a back injury which was later redeemed.

On March 4, 1974, plaintiff filed the petition which initiated the instant case.

January 23, 1975, a hearing was held. At this hearing plaintiff admitted that he did not follow the program of exercise which had been prescribed for him by the surgeon who did the second operation on his knee. He also admitted that he was capable of doing the favored work for Premier and that he could go back to this job.

The hearing referee held that plaintiff was not entitled to compensation after he obtained employment with Lansing Heat Treat. His decision was based on: (1) plaintiff's termination of favored work provided by Premier, and (2) plaintiff's failure to follow the recommendations of his surgeon in order to rehabilitate his knee.

The WCAB overturned the referee, holding that even if plaintiff's termination of favored employment was unreasonable, it was overcome by the second operation on his knee. Premier's failure to reoffer favored work reinstituted his right to benefits.

The board also held that the plaintiff's non-cooperation on medical treatments did not rise to the level of refusal to treat or accept medical treatment. (What the level of refusal is was not stated.)

The issues raised on appeal are as follows:

1. Did the WCAB apply an incorrect legal standard in holding that plaintiff was entitled to benefits even if he unreasonably terminated his favored work employment?

2. Did the WCAB err in holding that plaintiff's failure to follow rehabilitative exercises did not rise to a level of refusal to treat or accept medical treatment?

3. Did the WCAB err by failing to determine the wage earning capacity of the plaintiff?

This Court is required to accept factual findings of the WCAB if "any evidence" exists in the record to support them. This Court may, however, correct erroneous rulings of law. See, *e.g., Higgins v Monroe Evening News,* 70 Mich App 407, 412; 245 NW2d 769 (1976).

1. As to the first issue, the WCAB held that, assuming plaintiff's termination of favored employment was unreasonable, this would not be a bar to benefits after plaintiff's second surgical operation on his previously injured right knee. The WCAB found the work plaintiff was doing for Premier was "favored work" within his capacity to perform.

The conclusion reached by the WCAB presents a novel situation not apparently passed upon in this state. The appellate courts of this state have consistently held that a refusal of favored work that the injured employee is capable of performing terminates the right to compensation benefits. *Lynch v Briggs Manufacturing Co,* 329 Mich 168, 172; 45 NW2d 20 (1950), *Morris v General Motors Corp,* 57 Mich App 534, 537; 226 NW2d 554 (1975), *rev'd on other grounds,* 394 Mich 453; 231 NW2d 646 (1975), *Hope v Welch Grape Juice Co,* 46 Mich App 128, 129; 207 NW2d 476 (1973).

The WCAB did not make a finding of fact as to whether plaintiff refused favored employment which he was capable of performing. This Court cannot make such a finding and such a finding is essential to a ruling of law based thereon. A remand for an appropriate finding by the WCAB is therefore necessary. See *Wright v Thumb Electric Cooperative,* 49 Mich App 714, 717–718; 212 NW2d 607 (1973). See also *Niekro v The Brick Tavern,* 66 Mich App 53, 59; 238 NW2d 537 (1975).

2. As to the second issue the WCAB held as follows:

"As to the medical non-cooperation argument, we only note that plaintiff willingly underwent two surgeries on his right knee, and that notwithstanding inadequate exercising afterward, that cannot be called lack of cooperation such as would bar his right to benefits. Both plaintiff and defendant are somewhat the loser for his failure to exercise as regularly as Dr. Lint recommended, but plaintiff's actions do not rise in any way to the level of refusal to treat or accept medical treatment."

The WCAB in reaching a decision must indicate the testimony it has adopted, the legal standard it has applied to that testimony and the reasoning it has used in reaching its decision. *Gibbs v Keebler Co,* 56 Mich App 690, 692; 224 NW2d 698 (1974), *Moore v Gundelfinger,* 56 Mich App 73, 78; 223 NW2d 643 (1974), *Lamb v John's Tavern,* 37 Mich App 678, 681; 195 NW2d 278 (1972), *McClary v Wagoner,* 16 Mich App 326, 328; 167 NW2d 800 (1969).

Appellants have cited certain cases dealing with a refusal to submit to surgery and argue by analogy for a legal standard applicable to a refusal or neglect to follow recommended exercise. We find no cases on this point and, therefore, believe it advisable to set forth appropriate standards. The question has been dealt with in other jurisdictions. *Sanderson v Secrest Pipe Coating Co,* 465 SW2d 65 (Ky 1971), *Davis v Great American Indemnity Co,* 131 So 2d 253 (La App 1961), *Foster v Great American Indemnity Co,* 121 So 2d 350 (La App 1960).

Larson has commented on this problem as follows:

"When the treatment prescribed takes the form of exercise, obviously there is no element of risk, and unreasonable refusal to follow medical instructions will lead to a loss of benefits for any disability attributable to this refusal. Here, as in the case of surgery, the test of reasonableness of refusal applies. The possibility of

pain in connection with the exertion, the age of the claimant, and the probability of benefit from the exercise, manipulation or other treatment, are all relevant to the question of reasonableness." 1 Larson, Workmen's Compensation Law, § 13.22, pp 3-322–3-323.

We adopt the standards from Larson and hold that the correct standards to apply to this question of the reasonableness of a failure to follow recommended exercise, are: (1) the pain necessarily produced; (2) the claimant's age, and (3) the probability of benefit from the course of treatment.

The WCAB should re-examine these findings, applying the legal standards herein set forth.

The final issue deals with whether or not the evidence established a wage earning capacity in the plaintiff thereby defeating his claim.

In *Pulley v Detroit Engineering & Machine Co,* 378 Mich 418, 423; 145 NW2d 40 (1966), the Supreme Court discussed the concept of wage earning capacity and observed in part as follows:

"Thus, the method of determining the employee's earning capacity, as that term is used in the act, is a complex of fact issues which are concerned with the nature of the work performed and the continuing availability of work of that kind, and the nature and extent of the disability and the wages earned. This determination by legislative enactment is reposed in the workmen's compensation department."

See also *Medacco v Campbell, Wyant & Cannon Foundry Co,* 48 Mich App 217; 210 NW2d 360 (1973).

This issue was before the WCAB inasmuch as it was raised in the appellants' brief with them. The WCAB has not passed upon this issue. The determination of wage earning capacity is a "complex of fact issues" for the WCAB to determine.

Reversed and remanded for proceedings consistent with this opinion.