**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED MAY 13, 2003**

RONALD G. SWEATT,

    Plaintiff-Appellee,

v      No. 120220

DEPARTMENT OF CORRECTIONS,

    Defendant-Appellant.

_____

**BEFORE THE ENTIRE BENCH**

**MARKMAN, J.**

We granted leave to appeal in this case to consider whether defendant must pay plaintiff differential worker's compensation benefits, i.e., partial-disability benefits, under subsection 361(1) of the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq.*, where defendant, by law, cannot rehire plaintiff because of plaintiff's "commission of a crime." The worker's compensation magistrate concluded that the fact that plaintiff is no longer able to work for defendant as a result of plaintiff's "commission of

a crime" does not relieve defendant of its responsibility to pay plaintiff differential benefits. The Worker's Compensation Appellate Commission (WCAC) and the Court of Appeals affirmed. In our judgment, although defendant must pay a percentage of the difference between what plaintiff was earning while working for defendant and what plaintiff was earning at the time of the hearing (plaintiff's loss of wage-earning capacity) to the extent that this difference is attributable to plaintiff's work-related injury, defendant is not required to pay a percentage of the difference that is attributable to plaintiff's "commission of a crime."

We conclude that the language of MCL 418.361(1) makes clear that the Legislature intended that employees no longer be able to receive worker's compensation benefits for a loss of wage-earning capacity that is attributable to an employee's "imprisonment or commission of a crime."[1] The dissent fails, in our judgement, to give effect to this intent, and would allow benefits to be paid to employees because of a loss of wage-earning capacity attributable to "imprisonment or commission of a crime." We reverse the judgment of the Court

---

[1] Before the amendment of this statute in 1985, an employer was obligated to pay an imprisoned employee benefits. *Sims v R D Brooks, Inc*, 389 Mich 91, 93; 204 NW2d 139 (1973). Manifestly, in our judgment, it was the intent of the Legislature in 1985 to alter this situation. Yet, the dissent appears unwilling to permit this legislative judgment to prevail.

of Appeals and remand this case to the magistrate to determine to what extent, if any, plaintiff's loss of wage-earning capacity is attributable to his work-related injury and to what extent, if any, plaintiff's loss of wage-earning capacity is attributable to his "commission of a crime."

## I. FACTS AND PROCEDURAL HISTORY

In 1986, plaintiff began working for defendant as a corrections officer. In 1989, plaintiff injured his knee when he intervened in a fight between prisoners. Defendant voluntarily paid worker's compensation benefits to plaintiff because it had a policy of not rehiring anybody who was not one hundred percent fit for duty.[2] In 1995, plaintiff was convicted of delivery of heroin, a felony, and, as a result, was imprisoned. Once plaintiff was convicted and imprisoned, defendant stopped paying benefits to plaintiff. Also in 1995, defendant discontinued its policy of not rehiring anybody who was not one hundred percent fit for duty and began offering favored work to which plaintiff would have been eligible if he were not imprisoned. Defendant took part in a work-release program while he was imprisoned.

In 1996, MCL 791.205a became effective, which forbids defendant from hiring and subsequently employing persons who

_____

[2] In other words, defendant had a policy of not offering favored work.

3

have been convicted of a felony. Also in 1996, plaintiff was paroled. It is undisputed that plaintiff continues to have a work-related injury. In 1998, plaintiff began working for Pressure Vessel, Inc., earning less than he had while working for defendant.

Plaintiff petitioned for differential worker's compensation benefits. Defendant denied plaintiff's request on the basis that it was not required to pay plaintiff differential benefits because plaintiff was convicted of a felony and MCL 791.205a(1) precludes the department from hiring someone convicted of a felony and MCL 418.361(1) relieves it of its responsibility to pay differential benefits to an employee who is unable to work for defendant because of the "commission of a crime."

The magistrate concluded that defendant is required to pay plaintiff differential benefits and the fact that defendant is precluded from rehiring plaintiff does not at all relieve defendant of this requirement. In a four-to-three decision, the WCAC affirmed. The majority concluded that, in order for it to be relieved of its responsibility to pay plaintiff differential benefits, the department must prove, and it had not, that, were it not for the statutory prohibition on hiring an ex-felon, it would have made an offer

4

of reasonable employment to plaintiff.[3]  The dissenting commissioners disagreed, stating that the majority erred in placing "an artificially-created burden on defendant to prove it would have done the very thing the ex-felon statute prohibits defendant from doing, namely, offering employment to an ex-felon . . . ."

In a divided opinion, the Court of Appeals affirmed. While the concurring opinion author concluded that the WCAC reached the right result for the right reasons, the lead opinion writer concluded that the WCAC reached the right result for the wrong reasons.  Specifically, the lead opinion writer concluded that defendant was not relieved of its responsibility for paying plaintiff differential benefits because plaintiff was not "unable to perform or obtain work" as the result of the "commission of a crime," MCL 418.361(1), as evidenced by the fact that plaintiff was working at the time of the hearing.  The dissenting judge, on the other hand,

---

[3] The WCAC first remanded to the magistrate for the magistrate to determine whether "defendant Department of Corrections would have made an offer of reasonable employment to plaintiff were it not for the statutory prohibition against employment of any individual who had been convicted of a felony."  On remand, the magistrate found that "there would not have been an offer of reasonable employment to plaintiff were it not for the statutory prohibition.  To find otherwise would be pure speculation, something not permitted under Michigan law."  The WCAC concluded that this finding was "supported by competent, material, and substantial evidence on the whole record."

concluded that because plaintiff was unable to work for defendant because of the "commission of a crime," defendant was relieved of its responsibility to pay plaintiff any differential benefits.

## II. STANDARD OF REVIEW

Whether defendant must pay differential benefits to plaintiff under MCL 418.361(1) is a question of statutory interpretation. Questions of statutory interpretation are questions of law that are reviewed de novo by this Court. *Robertson v DaimlerChrysler Corp*, 465 Mich 732, 739; 641 NW2d 567 (2002).

## III. ANALYSIS

That defendant cannot employ plaintiff because of his "commission of a crime" is undisputed. MCL 791.205a(1) provides:

> Beginning on the effective date of this section, an individual who has been convicted of a felony, or who is subject to any pending felony charges, shall not be employed or appointed to a position in the department [of corrections].

Plaintiff has been convicted of a felony; thus, defendant cannot reemploy plaintiff. A part of the Worker's Disability Compensation Act (WDCA), MCL 418.361(1), provides:

> While the incapacity for work resulting from a personal injury is *partial*, the employer shall pay, or cause to be paid to the injured employee weekly compensation equal to 80% of the *difference* between the injured employee's after-tax average weekly wage before the personal injury and the after-tax

6

> average weekly wage which the injured employee is *able to earn after the personal injury*, but not more than the maximum weekly rate of compensation, as determined under section 355. Compensation shall be paid for the duration of the disability. *However*, an employer shall not be liable for compensation under section 351, 371(1), or this subsection for such periods of time that the employee is *unable to obtain or perform work because of imprisonment or commission of a crime.* [Emphasis added.]

This provision is known as the differential worker's compensation or partial-disability provision. Under this provision, an employer must pay an employee a percentage of the difference between what the employee was earning while working for the employer before the employee was injured and what the employee is able to earn after the work-related injury. However, the employer is not liable to the employee to the extent that "the employee is unable to obtain or perform work because of imprisonment or commission of a crime."

Defendant argues that it does not have to pay plaintiff anything because plaintiff is "unable to obtain or perform work" with defendant because of plaintiff's "commission of a crime." Plaintiff, on the other hand, argues that defendant must pay plaintiff the total difference between what plaintiff was earning while working for defendant and what plaintiff was earning at the time of the hearing because plaintiff was not "unable to obtain or perform work" as evidenced by the fact

that plaintiff was, in fact, working at the time of the hearing.

The language "unable to obtain or perform work" does not stand alone, and thus it cannot be read in a vacuum. Instead, "[i]t exists and must be read in context with the entire act, and the words and phrases used there must be assigned such meanings as are in harmony with the whole of the statute, construed in the light of history and common sense." *Arrowhead Dev Co v Livingston Co Rd Comm*, 413 Mich 505, 516; 322 NW2d 702 (1982).[4] When interpreting a statute, we must "consider both the plain meaning of the critical word or phrase as well as 'its placement and purpose in the statutory scheme.'" *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999) (citation omitted). "Contextual understanding of statutes is generally grounded in the doctrine of *noscitur a sociis*: 'it is known from its associates,' see Black's Law Dictionary (6th ed), p 1060. This doctrine stands for the principle [of interpretation] that a word or phrase is given meaning by its context or setting." *Tyler v Livonia Pub Schools,* 459 Mich 382, 390-391; 590 NW2d 560 (1999). Although

___

[4] "[W]ords in a statute should not be construed in the void, but should be read together to harmonize the meaning, giving effect to the act as a whole." *Gen Motors Corp v Erves (On Rehearing)*, 399 Mich 241, 255; 249 NW2d 41 (1976)(opinion by COLEMAN, J.).

a phrase or a statement may mean one thing when read in isolation, it may mean something substantially different when read in context. *McCarthy v Bronson*, 500 US 136; 111 S Ct 1737; 114 L Ed 2d 194 (1991); *Mastro Plastics Corp v Nat'l Labor Relations Bd*, 350 US 270; 76 S Ct 349; 100 L Ed 309 (1956); *Hagen v Dep't of Ed*, 431 Mich 118, 130-131; 427 NW2d 879 (1988); *Fowler v Bd of Registration in Chiropody*, 374 Mich 254, 257-258; 132 NW2d 82 (1965).[5]  Therefore, "[a] statute must be read in its entirety . . . ." *State Bd of Ed v Houghton Lake Community Schools*, 430 Mich 658, 671; 425 NW2d

---

[5] In *McCarthy, supra* at 139, the United States Supreme Court stated:

> We do not quarrel with petitioner's claim that the most natural reading of the phrase "challenging conditions of confinement," when viewed in isolation, would not include suits seeking relief from isolated episodes of unconstitutional conduct. However, statutory language must always be read in its proper context.  "In ascertaining the plain meaning of [a] statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." [Citation omitted.]

Similarly, in *Mastro Plastics, supra* at 285, the United States Supreme Court stated:

> [I]f the above words are read in complete isolation from their context in the Act, such an interpretation is possible.  However, "In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy."  [Citation omitted.]

80 (1988).

When the statutory provision that is at issue here is read in its entirety, and, in particular, when the language "unable to obtain or perform work" is read in context, it becomes clear that neither defendant nor plaintiff (nor the dissent, which is in agreement with plaintiff) is entirely correct in its construction of MCL 418.361(1).  The first sentence of this provision states that "[w]hile the incapacity for work resulting from a personal injury is partial, the employer shall pay . . . ."  Thus, it is clear that this provision applies *only* to employees who suffer from a partial incapacity for work.  If an employee has a partial *incapacity* for work, that employee must necessarily have a partial *capacity* for work.  Accordingly, this provision only applies to employees who are able to work in *some* capacity.

MCL 418.361(1) further provides that employers must pay such employees "80% of the difference between the injured employee's after-tax average weekly wage before the personal injury and the after-tax average weekly wage which the injured employee is *able to earn after the personal injury* . . . ." (Emphasis added.)  From this language it becomes even more clear that this provision applies only to employees who are able to work in *some* capacity.  The phrase means that

10

employers must pay employees a percentage of the difference between what they earned before the injury and what they are able to earn after the injury.  Accordingly, this provision only applies to employees who are injured, but who, nevertheless, are able to work in *some* capacity.

MCL 418.361(1) first states that an employer must pay an employee a percentage of the difference between what the employee earned before the injury and what the employee is able to earn after the injury.  It then states, "However, an employer shall not be liable for compensation under . . . this subsection for such periods of time that the employee is unable to obtain or perform work because of imprisonment or commission of a crime."  Accordingly, this provision first creates a liability, and then creates an exception to this liability.  The dissent contends that this exception applies only to unemployed employees, and that it does not apply to employed employees.  However, if that were the case, this exception would never apply to *any* partially disabled employees, and thus it would be rendered nugatory with regard to these employees.[6]  That is, if this exception were

_____

[6] This exception applies to both partial disabilities and total disabilities.  "[A]n employer shall not be liable for compensation under section 351 . . . or this subsection . . . ."  MCL 418.361(1).  "[S]ection 351" is the section pertaining to total disabilities and "this subsection" is the subsection pertaining to partial disabilities.  However, under the

11

approach of the dissent, this exception would only apply to total disabilities; it would never apply to partial disabilities. That this exception is to be applied to partial disabilities is obvious. First, the exception is found in the partial-disabilities provision. Second, this provision specifically states, "an employer shall not be liable for compensation under . . . this subsection [i.e., the partial-disabilities subsection] . . . ." MCL 418.361(1). In sum, contrary to the dissent's assertion, we recognize that the dissent's approach would not render this exception nugatory with respect to *total* disabilities; however, the dissent's approach *would* render this exception nugatory with respect to partial disabilities, although it is manifestly obvious that the Legislature intended this exception to apply to the latter as well.

The dissent attempts to accord this exception some meaning with respect to partial disabilities by observing that it would apply where an employee who is partially disabled because of a work-related injury becomes totally disabled *because of* his own "commission of a crime." The dissent concludes that "the employer would not be liable for benefits to this employee under the exception." *Post* at 11. The dissent posits a hypothetical example in which a partially disabled robber becomes fully disabled as a result of slipping and falling during the course of the robbery. However, the dissent itself concludes that the exception would only apply to the totally disabled, not the partially disabled, employee. As explained above, we recognize that the dissent's approach *would* give meaning to this exception with regard to totally disabled employees. However, our quarrel with the dissent's approach is that it fails to accord any meaning to the exception with regard to partially disabled employees. The dissent somehow draws from its hypothetical example, in which it concludes that the exception is applicable to a totally disabled employee, that meaning has also been given to the exception in the context of a partially disabled employee. Further, we do not agree with the dissent that the employer in its hypothetical example would necessarily escape all liability. Rather, the employer of the dissent's "partially disabled robber" would remain liable for the employee's loss of wage-earning capacity that is attributable to the employee's work-related injury, but the employer would not be liable for the employee's loss of wage-earning capacity that is attributable to the employee's "commission of a crime."

construed, as the dissent construes it, to only exclude unemployed employees, this exception will be rendered meaningless regarding partially disabled employees because employers are not liable to unemployed, partially disabled employees under *this* provision in the first place.  Why would the Legislature create a liability that only extends to employed employees and then create an exception to this liability that only extends to unemployed employees?  It simply would not make any sense to exempt unemployed employees from liability where employers are not liable to unemployed employees under this provision to begin with.

It is well established that this Court should avoid construing a statute in such a way that renders any part of it nugatory.  *Omelenchuk v City of Warren*, 466 Mich 524, 528; 647 NW2d 493 (2002).  "It is our duty to read the statute as a whole and to avoid a construction which renders meaningless provisions that clearly were to have effect."  *Apportionment of Wayne Co Bd of Comm'rs-1982*, 413 Mich 224, 259-260; 321 NW2d 615 (1982).

A reading of this statute in its entirety evidences an

According to the dissent, on the other hand, an unemployed, totally disabled employee is not entitled to any benefits regardless of whether the employee still suffers from a loss of wage-earning capacity that is attributable to the work-related injury because that employee is unable to work because of the "commission of a crime."

intent to obligate employers to provide employees with partial-disability benefits when an employee is still able to work, but is unable to earn as much money as before the work-related injury. Accordingly, as explained above, this provision only addresses those situations in which the employee still has a wage-earning capacity, but a reduced wage-earning capacity. That is, it only addresses those situations in which the employee is employed, but earning less money than before the work-related injury.

In this context, it becomes quite clear that the language "unable to obtain or perform work" is referring to a loss of wage-earning capacity, rather than the inability to work at all. Therefore, employers must compensate employees for a loss of wage-earning capacity that resulted from a work-related injury. However, the statute provides an exception to this obligation when the reason that the employee is unable to earn as much money is attributable, not to the work-related injury, but to the employee's "imprisonment or commission of a crime."[7] Accordingly, if the difference in pay is because

[7] Defendant suggests, and the dissenting Court of Appeals judge agreed, that this exception to an employer's obligation to pay partial-disability benefits applies whenever the employee is "unable to obtain or perform work" for that particular employer. In other words, defendant contends that this exception is employer-specific. However, there is no indication in the statute itself to suggest that this exception is employer-specific. Therefore, we conclude that this provision is not employer-specific, and thus that

14

of "imprisonment or commission of a crime," the employee is not entitled to differential benefits.  If the difference in pay is a result, not of "imprisonment or commission of a crime," but of a work-related injury, the employee is entitled to benefits.[8]

---

defendant's interpretation of this provision is mistaken.

Further, we agree with the dissenting worker's compensation commissioners that the WCAC majority placed "an artificially-created burden on defendant to prove it would have done the very thing the ex-felon statute prohibits defendant from doing, namely, offering employment to an ex-felon . . . ."  To require defendant to prove that it would have hired plaintiff *if* it were not for his "commission of a crime" is an impossible burden.  In this case, plaintiff's "commission of a crime" bars defendant from offering plaintiff a position, and thus whether defendant would have offered plaintiff such a position if defendant was not so barred is simply not possible to know because once defendant determined that it could not rehire plaintiff because of his commission of a felony, the employment inquiry stopped.  The WCAC's approach, however, would require the inquiry to continue. That is, it would require defendant to make a needless determination, i.e., whether it would have hired plaintiff if plaintiff had not committed this felony.  The statute does not require that futile inquiry, and thus the WCAC erred in requiring it.  The dissent criticizes us for "merely recharacteriz[ing] the question posed to the magistrate by the WCAC on remand."  *Post* at 9.  We do not agree with this portrayal of our position. We are not remanding this case to the magistrate to determine whether defendant proved that it would have hired plaintiff had it not been for his "commission of a crime."  Instead, we are remanding to determine what portion of plaintiff's loss of wage-earning capacity is fairly attributable to his work-related injury or to his "commission of a crime."

[8] Note that it could be possible for the reduction in pay to be partly because of an "imprisonment or commission of a crime" and partly because of a work-related injury.  In such a situation, as may well be the case here, the employer would

15

This interpretation is not only in accord with the language of MCL 418.361(1), but it better comports with other provisions of the WDCA and decisions of this Court. Under the WDCA, MCL 418.101 *et seq.*, injured employees are not entitled to benefits if the injury is "by reason of his intentional and wilful misconduct," MCL 418.305; the "injury [is] incurred in the pursuit of an activity the major purpose of which is social or recreational," MCL 418.301(3); the employee unjustifiably refuses to rehabilitate himself, MCL 418.319(1); the employee refuses without good and reasonable cause a bona fide offer of reasonable employment, MCL 418.301(5)(a); the employee unreasonably refuses surgery, *Kricinovich v American Car & Foundry Co*, 192 Mich 687, 690; 159 NW 362 (1916); or the employee refuses to undertake exercises designed to hasten recovery, *Bower v Whitehall Leather Co*, 412 Mich 172, 184; 312 NW2d 640 (1981), citing *Brown v Premier Mfg Co*, 77 Mich App 573, 578-579; 259 NW2d 143 (1977). These propositions adhere because there must be a linkage between the disabling work-related injury and the reduction in pay. *Sington v Chrysler Corp*, 467 Mich 144, 155; 648 NW2d 624 (2002).[9]

---

be liable for the reduction in pay attributable to the work-related injury. The employer would not be liable for the reduction in pay attributable to the "imprisonment or commission of a crime."

[9] "[T]he WCAC should consider whether *the injury has actually resulted in a loss of wage earning capacity* in work suitable to the employee's training and qualifications in the

16

In this case, there would be no such linkage if plaintiff's pay were reduced, not because of his work-related injury, but because of his commission of a felony. After plaintiff committed this felony, defendant, as a matter of law, could not reemploy plaintiff, and thus plaintiff began working somewhere else where he was unable to earn as much money as he had earned while working for defendant. Therefore, it is at least arguably because of his "commission of a crime" that plaintiff is earning less money, not because of the work-related injury. Worker's compensation was not designed to compensate employees whose unemployment is not attributable to a work-related injury, but rather to some nonemployment-related reason such as the "commission of a crime." As the writer of the lead Court of Appeals opinion recognized, "The purpose of the worker's compensation act is to compensate a claimant for lost earning capacity caused by a work-related injury . . . ." 247 Mich App 555, 566; 637 NW2d 811 (2001).[10] In this case, the lost earning capacity was

ordinary job market." *Id*. at 158 (emphasis added).

[10] In our judgment, the construction of MCL 791.205a(1) set forth in this opinion is more in accord with this purpose than the dissent's construction. Under our construction, while employers will not be able to escape liability for an employee's loss of wage-earning capacity that is attributable to the employee's work-related injury, the employer will not be held liable for an employee's loss of wage-earning capacity that is attributable to the employee's "imprisonment or commission of a crime." Under the dissent's approach, although the employer will not be able to escape liability for

arguably caused, not by a work-related injury, but by the
commission of a felony.[11]

------

an employee's work-related injury, the employer will *also* be
held liable for an employee's loss of wage-earning capacity
that is attributable to the employee's "imprisonment or
commission of a crime."  That is, what divides these opinions
is the eligibility of employees for worker's compensation
benefits related to their own "imprisonment or commission of
a crime."  This opinion interprets the statute in accordance
with the manifest intent of the Legislature to deny such
benefits to employees, while the dissent would allow such
benefits.  Notwithstanding that employees were entitled to
such benefits before the 1985 worker's compensation amendments
and that the Legislature clearly intended that the situation
be altered, the dissent refuses to give effect to the
Legislature's intent that employers will not be liable for an
employee's loss of wage-earning capacity that is attributable
to "imprisonment or commission of a crime."  Apparently, there
is little that the people of Michigan can do through their
Legislature to disallow such benefits in light of the
dissent's determination that they be maintained.

[11] The dissent states: "Although [plaintiff was] earning
less than he had earned while he worked for defendant *because
of* the physical limitations caused by his work-related injury,
plaintiff was working." *Post* at 3 (emphasis added).  If it is
true that plaintiff is earning less because of his work-
related injury, we would agree with the dissent that defendant
must pay plaintiff a percentage of this difference.  However,
if plaintiff is earning less because of his "commission of a
crime," defendant is not obligated to pay plaintiff a
percentage of this difference.  That is, we agree with the
dissent that "[d]efendant must still pay benefits to plaintiff
as compensation for his loss of wage-earning capacity
attributable to plaintiff's work-related injury," assuming
that some or all of plaintiff's loss of wage-earning capacity
is attributable to plaintiff's work-related injury.  *Post* at
5.  Accordingly, this case must be remanded to the magistrate
to determine to what extent, if any, plaintiff's loss of wage-
earning capacity is attributable to his work-related injury
and to what extent, if any, plaintiff's loss of wage-earning
capacity is attributable to his "commission of a crime."

The dissent criticizes us for "provid[ing] the magistrate

18

Reading this provision as the dissent does would anomalously require employers to pay employees partial-disability benefits because the employees are imprisoned or

with absolutely no guidance for making this determination." *Post* at 9. However, we are not asking the magistrate to do anything other than what magistrates have been required to do since the enactment of the WDCA, that is, to determine whether, and to what extent, there is a linkage between plaintiff's work-related injury and his loss of wage-earning capacity. See *Sington, supra* at 155. To the extent that there *is* such a linkage, plaintiff is entitled to benefits. However, to the extent that plaintiff's loss of wage-earning capacity is attributable, not to his work-related injury, but to his "commission of a crime," plaintiff is not entitled to benefits.

The dissent repeatedly states that "the magistrate has already determined that plaintiff's work-related injury . . . is the only thing preventing plaintiff from returning to other types of work." *Post* at 7. However, that is not the test to be applied to determine eligibility for worker's compensation benefits. As this Court recently explained in *Sington, supra* at 158, the test is not whether plaintiff suffers from a work-related injury that prevents him from returning to other types of work; rather, the test is whether plaintiff suffers from a work-related injury that results in a loss of wage-earning capacity. Accordingly, the magistrate must now determine why plaintiff is suffering a loss of wage-earning capacity. Is it because of his work-related injury? That is, would plaintiff not be suffering a loss of wage-earning capacity if he were not injured? Or, is it because of his "commission of a crime?" That is, would plaintiff not be suffering a loss of wage-earning capacity if he had not been convicted of a felony and subsequently incarcerated? The dissent states that because "[f]indings of disability and wage-earning capacity have been established and are not disputed" there is no need to remand this case to the magistrate. *Post* at 10. However, although the plaintiff has indeed suffered a work-related injury, as well as a loss of wage-earning capacity, what has not yet been established, in our judgment, is whether plaintiff's work-related injury *caused* his loss of wage-earning capacity. See 22 n 13.

19

have committed a crime, where such employers would not have to pay partial-disability benefits if the employees were not imprisoned or had not committed a crime. In other words, employers would be required to pay benefits to employees solely because they are imprisoned or because they committed a crime. For example, if an employee is injured, but this injury does not affect his ability to earn the same amount of money as he did before he was injured, that employee would not be entitled to partial-disability benefits. However, under the dissent's reading of MCL 791.205a(1), if the employee were *then* imprisoned, yet able to "obtain and perform work," but not earn as much money, he would be entitled to partial-disability benefits.[12] As we have already observed, the

_____

[12] In the present case, plaintiff was able to "obtain and perform work" while he was imprisoned through a work-release program. Although plaintiff does not seek partial-disability benefits for the time that he was imprisoned, under the dissent's analysis, plaintiff would certainly be entitled to such benefits. As Judge Griffin in dissent stated in response to the lead opinion, which, like the dissent here, concluded that the exception only applies to unemployed employees:

The parties, magistrate, WCAC majority, WCAC dissenters, my colleagues, and I all agree that subsection 361(1) operates to exclude defendant from liability for worker's compensation benefits for the period that plaintiff was imprisoned. However, if the "test" proposed by the lead opinion for subsection 361(1) were applied to the present circumstances, plaintiff would also be entitled to worker's compensation benefits during his period of imprisonment. This is because plaintiff was able to obtain and perform work during his imprisonment and thus "plaintiff is not unable to obtain or

20

purpose of the WDCA is to compensate employees for work-related injuries.  It is not intended to compensate employees for committing crimes and becoming imprisoned.

The dissent accuses us of "ignor[ing] the plain language of the statute" and of not respecting the Legislature's choice of words in MCL 418.361(1).  *Post* at 8.  Yet, it is the dissent's interpretation that gives absolutely no meaning to the entire last sentence of this provision in which these words are contained.  That is, while the dissent purports to define this sentence, it does so by defining it into meaninglessness.  It gives meaning to discrete words within this sentence at the cost of giving coherent meaning to the sentence itself.  The dissent would award worker's compensation benefits under MCL 418.361(1) as if the last sentence of this provision were absent.  We would address the following questions to the dissent: What meaning does the dissent give to this sentence?  And if, as we suggest, the dissent gives it *no* meaning, how can this conceivably comport with the intention of the Legislature?  Under the dissent's interpretation, it is as if, when the Legislature enacted this provision, it decided that the last sentence should have no

---

perform work for that reason."  (Opinion by Neff, J., *ante* at [565].)  Judge Neff's construction of § 361 and its test for application fails because its results, as applied to plaintiff, are simply illogical.  [247 Mich App 577 (citation omitted).]

21

meaning or that the Legislature should appear to be saying something while saying nothing. We do not believe that we can presume such folly and, instead, that we must give the most reasonable meaning possible to the words of the Legislature.

## IV. CONCLUSION

The WDCA, MCL 418.361(1), provides that an employer is liable to an employee for a percentage of the employee's loss of wage-earning capacity, except when this loss of wage-earning capacity is because of the "commission of a crime." Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the magistrate to determine to what extent, if any, plaintiff's loss of wage-earning capacity is because of a work-related injury, and, to what extent, if any, plaintiff's loss of wage-earning capacity is because of the "commission of a crime."[13]

---

[13] The dissent repeatedly states that the magistrate has already determined that plaintiff is disabled. However, the magistrate originally found plaintiff to be disabled as defined in *Haske v Transport Leasing, Inc*, 455 Mich 628, 634; 566 NW2d 896 (1997). This Court has since overruled *Haske*. See *Sington, supra* at 161. Accordingly, on remand, the magistrate is to determine whether plaintiff is disabled as defined in *Sington, supra* at 158. That is, if the magistrate determines that plaintiff's loss of wage-earning capacity is wholly attributable to his "commission of a crime," the magistrate must conclude that plaintiff is not disabled because, under *Sington, supra* at 158, there must be a link between the work-related injury and the loss of wage-earning capacity. If the magistrate, however, determines that plaintiff's loss of wage-earning capacity is wholly attributable to his work-related injury, the magistrate must conclude that plaintiff is disabled and entitled to benefits.

                    Stephen J. Markman
                    Maura D. Corrigan
                    Clifford W. Taylor

YOUNG, J.

     I concur in the result only.

                    Robert P. Young, Jr.

---

Finally, if the magistrate determines that plaintiff's loss of wage-earning capacity is partly attributable to his work-related injury and partly attributable to his "commission of a crime," the magistrate must conclude that plaintiff is disabled and entitled to benefits for the portion of his loss of wage-earning capacity that is attributable to his work-related injury, but is not entitled to benefits for the portion of his loss of wage-earning capacity that is attributable to his "commission of a crime."

     The dissent states that it is inappropriate to remand this case for a redetermination of disability under *Sington* because defendant has never contested plaintiff's disability. *Post* at 4 n 2. Although defendant has not specifically contested plaintiff's disability, defendant has specifically contested its duty to pay plaintiff differential benefits in light of plaintiff's "commission of a crime." As explained above, if plaintiff's loss of wage-earning capacity is wholly attributable to his "commission of a crime," plaintiff is not disabled under *Sington*. In other words, whether defendant must pay plaintiff differential benefits in light of plaintiff's "commission of a crime," and whether plaintiff is disabled, are two interrelated questions that must be addressed on remand.

23

# STATE OF MICHIGAN

## SUPREME COURT

RONALD G. SWEATT,

    Plaintiff-Appellee,

v                                 No. 120220

DEPARTMENT OF CORRECTIONS,

    Defendant-Appellant.

_____

CAVANAGH, J. (*dissenting*).

I respectfully disagree with the majority's construction of MCL 418.361(1). While plaintiff is unable to work for defendant because of his commission of a crime, plaintiff is not unable to work. Because I would affirm the decisions of the Court of Appeals and Worker's Compensation Appellate Commission (WCAC) reinstating plaintiff's benefits, I must dissent.

  I. Plaintiff is not "unable to perform or obtain work."

In this case, we are called upon to determine whether MCL 418.361(1) and MCL 791.205a operate in conjunction to relieve defendant of liability for any payment to plaintiff because of

his commission of a crime.

MCL 418.361(1) provides:

> While the incapacity for work resulting from a personal injury is partial, the employer shall pay, or cause to be paid to the injured employee weekly compensation equal to 80% of the difference between the injured employee's after-tax average weekly wage before the personal injury and the after-tax average weekly wage which the injured employee is able to earn after the personal injury, but not more than the maximum weekly rate of compensation, as determined under section 355. Compensation shall be paid for the duration of the disability. However, an employer shall not be liable for compensation under section 351, 371(1), or this subsection for such periods of time that the employee is unable to obtain or perform work because of imprisonment or commission of a crime.

MCL 791.205a forbids defendant from hiring and subsequently employing persons who, inter alia, have been convicted of a felony or who were subject to pending felony charges. Defendant would have this Court conclude that because defendant is forbidden from reemploying plaintiff, plaintiff is unable to work because of his commission of a crime. I would conclude that the statutes, when read together, do not relieve defendant of liability.

When plaintiff was released from prison and sought reinstatement of his benefits, he was able to work and had been working within his limitations while he was incarcerated and on parole. In fact, plaintiff was employed at the time of trial. Defendant would have us believe that because plaintiff was unable to work for defendant because of his

2

commission of a crime, defendant is relieved from paying benefits. However, this requires us to read into subsection 361(1) that the employee must be unable to work *for this particular employer*. I cannot do so. Subsection 361(1) is not employer-specific. The statute provides that if the employee is unable to work for stated reasons, the employer is relieved from paying benefits. In this case, it cannot be stressed enough that plaintiff was able to work. Although earning less than he had earned while he worked for defendant because of the physical limitations caused by his work-related injury, plaintiff was working.

The magistrate correctly decided this case when it was first before her. She recognized that there is no case law authorizing defendant to terminate plaintiff's benefits just because plaintiff is no longer able to work *for defendant*. Further, the only thing preventing plaintiff from engaging in other types of work is his disability, which was incurred as a result of his employment with defendant.[1] The statute simply cannot be read as authorizing defendant to terminate benefits.

---

[1]See the magistrate's November 18, 1998, opinion, page 6, where the magistrate stated: "Furthermore, there is nothing to prevent plaintiff from returning to other types of work except his disability which was incurred as a result of his employment with defendant."

3

The magistrate found as a fact, and plaintiff and defendant both agreed, that plaintiff continues to suffer a disability that inhibits his ability to earn wages as a result of the knee injury he sustained in the course of his employment with defendant.[2]

The magistrate's initial decision is in line with the purpose of the Worker's Disability Compensation Act, MCL 418.101 *et seq*. This Court has consistently construed the WDCA liberally to grant rather than deny benefits. *Simkins v Gen Motors (After Remand)*, 453 Mich 703, 710-711; 556 NW2d 839 (1996) (citing *Bower v Whitehall Leather Co*, 412 Mich 172, 191; 312 NW2d 640 [1981]); see also *DiBenedetto v West Shore Hosp*, 461 Mich 394, 402-403; 605 NW2d 300 (2000).

"The primary purpose of the worker's compensation act is to provide benefits to the victims of work-related injuries . . . ." *Simkins* at 711. The worker's compensation scheme is a compromise of sorts. An employee who suffers an injury

---

[2]The majority's suggestion that this case should be remanded for a redetermination of disability under *Sington v Chrysler Corp*, 467 Mich 144; 648 NW2d 624 (2002), is inappropriate. While *Sington* provides the current standard for disability determinations, defendant never contested plaintiff's disability. In fact, defendant willingly paid benefits from the date of plaintiff's injury until plaintiff's incarceration. Defendant's obligation to pay benefits has only been contested under MCL 418.361(1) in light of MCL 791.205a. Therefore, redetermination of disability under the *Sington* standard is unnecessary and inappropriate. The only issue in this case is whether defendant is relieved of its obligation to pay benefits because of plaintiff's commission of a crime.

4

arising out of and in the course of his employment is eligible for worker's compensation benefits regardless of whether the employer was at fault. In return, the employer is immunized from tort liability because worker's compensation is the "exclusive remedy" for a qualifying work-related injury. *Id.* See MCL 418.131.

In this case, it is undisputed that plaintiff suffered a partially disabling knee injury in the course of his employment with defendant. While it is clear that plaintiff is unable to work *for defendant* pursuant to MCL 791.205a, because of plaintiff's commission of a crime, plaintiff is not unable to work for another employer. Defendant must still pay benefits to plaintiff as compensation for his loss of wage-earning capacity attributable to plaintiff's work-related injury.

The reasonable-employment statute is helpful to this analysis. Reasonable employment is defined in MCL 418.301(9) as

> work that is within the employee's capacity to perform that poses no clear and proximate threat to that employee's health and safety, and that is within a reasonable distance from that employee's residence. The employee's capacity to perform shall not be limited to jobs in work suitable to his or her qualifications and training.

MCL 418.301(5) provides that when disability is established,[3] weekly wage-loss benefits are determined in part as follows:

> (a) If an employee receives a bona fide offer of reasonable employment from the previous employer, *another employer*, or through the Michigan employment security commission and the employee refuses that employment without good and reasonable cause, the employee shall be considered to have voluntarily removed himself or herself from the work force and is no longer entitled to any wage-loss benefits under this act during the period of such refusal. [Emphasis added.]

While subsection 301(5)(a) focuses on an employee's refusal of reasonable employment, it provides three methods by which an employee can receive an offer of reasonable employment—his previous employer, another employer, or the Michigan Employment Security Commission. In this case, the previous employer, defendant, could not offer plaintiff reasonable employment because of MCL 791.205a. However, two avenues remain by which the employee can receive an offer of reasonable employment—another employer or the Michigan Employment Security Commission. Defendant's argument ignores these remaining two avenues. Plaintiff was offered reasonable employment by Elco, which involved making air conditioners for automobiles. Plaintiff obviously accepted this reasonable employment, because he was employed there on the date of trial. That the employment was "reasonable," i.e., within

_____

[3]Disability was established by the magistrate, and defendant does not challenge this.

6

plaintiff's physical limitations, is established by plaintiff's testimony that the parts he worked with were "quite light" and he could "handle it pretty good."

Again, it must follow that because plaintiff was engaged in reasonable employment, he was not unable to work. Therefore, defendant is not relieved from paying worker's compensation benefits to plaintiff.

The majority criticizes my approach as suggesting that an employer will also be held liable for an employee's inability to work that is attributable to the employee's "imprisonment or commission of a crime." *Ante* at 17 n 10. This is not true. In this case, plaintiff is working, thus he is not "unable to work" because of his commission of a crime. Additionally, the magistrate has already determined that plaintiff's work-related injury, *not* plaintiff's commission of a crime, is the only thing preventing plaintiff from returning to other types of work. This will not be true in every case, but it has been established in this case. Because it has already been established that the exception to an employer's liability contained in MCL 418.361(1) does not apply in this case, the decisions of the Court of Appeals and WCAC reinstating plaintiff's benefits must be affirmed.

II. The majority's "loss of wage-earning capacity" analysis and remand direction is flawed.

The majority holds that defendant must pay only the

difference in wages between what plaintiff earned while working for defendant and what plaintiff was earning at the time of trial to the extent that the difference is caused by plaintiff's injury, not by plaintiff's commission of a crime. The majority remands this case to the magistrate to make this determination. I respectfully disagree. As I have previously pointed out, the magistrate already found that there is nothing to prevent plaintiff from returning to other types of work except his disability, which was incurred as a result of his employment with defendant. Additionally, such a holding ignores the plain language of the statute.

MCL 418.361(1) specifically states that "an employer shall not be liable for compensation . . . for such periods of time that the employee is *unable to obtain or perform work* because of imprisonment or commission of a crime." (Emphasis added.) The majority believes that the language "unable to obtain or perform work" refers to "a loss of wage-earning capacity, rather than the inability to work at all." *Ante* at 13-14.

I do not believe that the language of the statute can be construed in that manner. The Legislature's choice of the words "unable to obtain or perform work" must be respected. We can assume that the Legislature intended the phrase to mean exactly what it says—"unable to obtain or perform work," not

8

"loss of wage-earning capacity." The plain language of the statute simply does not support the majority's reading, or rewording, of the statute.

There is also a flaw in the majority's remand directing the magistrate to determine to what extent plaintiff's loss of wage-earning capacity is attributable to his work-related injury and to what extent plaintiff's loss of wage-earning capacity is attributable to plaintiff's "commission of a crime." The majority provides the magistrate with absolutely no guidance for making this determination. In essence, the majority merely recharacterizes the question posed to the magistrate by the WCAC on remand.

After the magistrate issued her first opinion, the WCAC remanded the case to the magistrate for a determination whether defendant would have offered reasonable employment to plaintiff were it not for the statutory prohibition. On remand, the magistrate concluded that there would not have been an offer of reasonable employment because to find otherwise would be pure speculation. The WCAC then held that the "mere fact" that this defendant cannot hire plaintiff because of the statutory prohibition does not automatically entitle defendant to relief from payment pursuant to MCL 418.361(1). The linkage of the two statutory provisions requires a critical additional "finding of fact," which was

9

the purpose of the WCAC's remand to the magistrate. The critical additional finding was whether defendant would have offered reasonable employment to plaintiff. Because this is a question of fact and because the magistrate found that defendant could not prove that it would have offered reasonable employment to plaintiff, the WCAC affirmed the magistrate's award of benefits to plaintiff.

The majority criticizes the WCAC majority for placing "'an artificially-created burden on defendant to prove it would have done the very thing the ex-felon statute prohibits defendant from doing, namely, offering employment to an ex-felon . . . .'" *Ante* at 14 n 7 (quoting the dissenting worker's compensation commissioners).

However, I would ask the majority: What is the magistrate to consider on remand? Findings of disability and wage-earning capacity have been established and are not disputed. The majority correctly holds that the exception in MCL 418.361(1) is not employer-specific, i.e., it cannot be read as excluding an employee who is unable to work *for this employer*. Because the magistrate has already determined that there is nothing to prevent plaintiff from returning to other types of work except his work-related disability, I am at a loss to discover what the magistrate is to consider on remand to determine what loss of wage-earning capacity is

10

attributable to the injury and what loss of wage-earning capacity is attributable to plaintiff's commission of a crime. Obviously, plaintiff is unable to work for defendant, *this employer*, because of his commission of a crime. Because we cannot read the statute as employer-specific and because plaintiff is able to work only in a limited capacity because of his work-related injury, I cannot fathom any way for the magistrate to determine that any portion of plaintiff's loss of wage-earning capacity is attributable to anything other than plaintiff's work-related injury, which she has already determined.

### III. My construction would not render the crime exception "nugatory."

The majority mistakenly asserts that my construction of the statute would render the exception nugatory. There are circumstances where an employee truly would be unable to work because of his commission of a crime or imprisonment. For example, if an employee has a work-related knee injury that renders him partially disabled, he is entitled to worker's compensation benefits. If this employee robs a gas station and trips on his way out, aggravating his work-related injury to the point where he can no longer perform work, this employee is unable to perform work because of his commission of a crime. Thus, the employer would not be liable for benefits to this employee under the exception. In this case,

11

plaintiff was unable to work for defendant because of MCL 791.205a; plaintiff was not unable to obtain or perform work because of his commission of a crime per MCL 418.361(1). Therefore, plaintiff is entitled to reinstatement of his benefits.

The majority also supports its assertion that my construction of the statute would render the exception nugatory by stating that "to only exclude unemployed employees, this exception will be rendered meaningless regarding partially disabled employees because employers are not liable to unemployed, partially disabled employees under *this* provision in the first place." *Ante* at 12. This assertion is clearly mistaken because, while the exception may be found in MCL 418.361, which is the partial-disability statute, the statute expressly states that it applies to MCL 418.351 as well, which is the total-disability statute. Any claimant who is "totally" or "totally and permanently" disabled is not likely to be employed. Thus, the statute expressly applies to claimants who are unemployed.

## IV. Conclusion

I would hold that when a plaintiff is not unable to work because he committed a crime, or stated differently, able to work even though he committed a crime, pursuant to MCL 418.361(1), a defendant is not relieved of its responsibility

to pay benefits.  MCL 418.361(1) is not employer-specific; it cannot be read to provide that an employee must be unable to work for a particular employer.  While plaintiff in this case is barred from working for defendant by MCL 791.205a, plaintiff is able to work.  Thus, I would affirm the decisions of the Court of Appeals and the WCAC reinstating plaintiff's benefits.

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly